**Leroy H. JOHNSON, Jr., Plaintiff, Appellant,**

v.

**Alex RODRIGUEZ, etc., et al., Defendants, Appellees.**

**No. 91–1237.**

United States Court of Appeals, First Circuit.

Submitted June 7, 1991.

Decided Aug. 23, 1991.

Rehearing and Rehearing En Banc Denied Oct. 9, 1991.

Leroy H. Johnson, Jr., pro se.

Scott Harshbarger, Atty. Gen., Com. of Massachusetts, and Amy Spector, Asst. Atty. Gen., Boston, Mass., on brief, for appellees Alex Rodriguez, et al.

Allan A. Ryan, Jr. and Robert B. Donin, Office of the Gen. Counsel, Harvard University, Cambridge, Mass., on brief, for appellee Harvard University.

Before TORRUELLA, SELYA and CYR, Circuit Judges.

SELYA, Circuit Judge.

Plaintiff-appellant Leroy Johnson, Jr. appeals the district court's *sua sponte* dismissal of his complaint. Because we find the legal theories on which Johnson's claims are based to be patently unmeritorious, we affirm.

## I. BACKGROUND

Based on the plaintiff's complaint and ancillary documents docketed in the district court, it appears that Johnson, a black male, filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) in January 1980. The charge was directed against Harvard University. It alleged that Johnson had applied for some fourteen positions over the preceding two months, ranging from laboratory technician to research assistant to messenger to security guard, all to no avail. Harvard's failure to hire him, Johnson said, was premised on his color.

The EEOC was unsuccessful in its conciliation efforts. It subsequently transmitted the charge to the Massachusetts Commission Against Discrimination (MCAD), a state agency. On September 27, 1983, the EEOC issued a statutory right-to-sue letter, putting Johnson on notice that he could file a private action in federal district court

within ninety days. Johnson did not sue. It was not until January 1989 that MCAD made a final disposition. At that time, the agency, through its chairman, Alex Rodriguez, who served as the so-called "investigating commissioner," concluded that there was no probable cause to buttress Johnson's charge of discrimination. Johnson pursued an administrative appeal. MCAD reviewed the case in April 1989 and sustained the original finding.

In January 1991, more than seven years after receipt of the right-to-sue letter, Johnson brought this action *pro se* against Harvard, MCAD, and Rodriguez. Invoking Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, and 42 U.S.C. § 1981, Johnson averred that Harvard had unlawfully denied him employment based on his race. He also claimed, pursuant to 42 U.S.C. § 1983, that MCAD and Rodriguez, acting under color of state law, had denied him procedural due process by mishandling the investigation of his charge. The district court granted Johnson leave to proceed *in forma pauperis* under 28 U.S.C. § 1915(a). The next month, however, the judge took away with the left hand what he had given with the right hand: before process was served, the judge ruled that Johnson's claims against Harvard were time-barred; that MCAD's finding of "no probable cause" was not reviewable in federal court; and that, in any event, the availability of an adequate state remedy precluded the prosecution of a section 1983 claim against MCAD and Rodriguez. Consequently, the district judge dismissed Johnson's complaint as frivolous pursuant to 28 U.S.C. § 1915(d). This appeal followed.

## II. DISCUSSION

We begin our analysis by explicating the governing legal standard. We then address the appellant's claims against Harvard and the state defendants, respectively.[1]

---

1. Since the appellant has made no effort to develop any argumentation contesting the district court's conclusion that his Title VII claim was filed well beyond the ninety-day limitation period, 42 U.S.C. § 2000e-5(f)(1), we treat the

Title VII claim as waived and, hence, do not address it. *See, e.g., United States v. Zannino,* 895 F.2d 1, 17 (1st Cir.), *cert. denied,* — U.S. ——, 110 S.Ct. 1814, 108 L.Ed.2d 944 (1990);

### A. *Legal Standard.*

The statute under which the district court purposed to act provides that the district court "may dismiss [a] case [filed *in forma pauperis* under 28 U.S.C. § 1915(a) ] ... if satisfied that the action is frivolous or malicious." 28 U.S.C. § 1915(d). Under the guidelines set forth in *Neitzke v. Williams,* 490 U.S. 319, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989), the dismissal of an indigent's complaint under section 1915(d) is appropriate only when the "claim is based on an indisputably meritless legal theory." *Id.* at 327, 109 S.Ct. at 1832; *see also Fredyma v. AT & T Network Systems, Inc.,* 935 F.2d 368, 369 (1st Cir.1991) (per curiam); *Purvis v. Ponte,* 929 F.2d 822, 826 (1st Cir.1991). In making this assessment, the district court must give the plaintiff the benefit of all the suggested facts and must indulge all reasonable inferences in his favor. If the complaint, so read, reveals "arguably meritorious legal theories whose ultimate failure is not apparent at the outset," *Neitzke,* 490 U.S. at 328, 109 S.Ct. at 18, then the court should permit the action to proceed.[2] We have held squarely that "a complaint which states a claim that appears to have expired under the applicable statute of limitations may be dismissed as frivolous" under section 1915(d). *Street v. Vose,* 936 F.2d 38, 39 (1st Cir.1991) (per curiam).

Our review of the lower court's order dismissing an action under 28 U.S.C. § 1915(d) is plenary.

### B. *Claims Against Harvard.*

In interpreting the complaint before us, we construe it liberally in an effort to accommodate a *pro se* litigant. *See Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976); *Ayala Serrano v. Lebron Gonzalez,* 909 F.2d 8, 12 (1st Cir.1990). Nonetheless, Johnson's challenge to the court's dismissal of his civil rights claim as time-barred need not occupy us for long. Although appellant cites both 42 U.S.C. § 1981 and § 1983, and, at times, skips back and forth between them in a random way, we read his claim against Harvard as invoking section 1981 ("[a]ll persons ... shall have the same right ... to the full and equal benefit of all laws ... as is enjoyed by white citizens"). Section 1983, after all, applies only to improper action *under color of state law*—and is, therefore, an irrelevancy in the case of Harvard, a private institution. *See, e.g., Johnson v. Pinkerton Academy,* 861 F.2d 335, 337 (1st Cir.1988) (a private school is not a state actor for purposes of § 1983).

Appellant asserts that, because federal civil rights statutes, such as section 1981, do not include internalized statutes of limitations, his action cannot be barred as untimely. This assertion is palpably incorrect. At all times material hereto, the law was clear that, when Congress had not established a time limitation for a federal cause of action, a local limitations period was to be adopted as federal law so long as it was not inconsistent with federal law or policy to do so. *See Wilson v. Garcia,* 471 U.S. 261, 266–67, 105 S.Ct. 1938, 1941–42, 85 L.Ed.2d 254 (1985). That practice demanded the application of state personal injury statutes of limitations in section 1981 suits. *See Goodman v. Lukens Steel Co.,* 482 U.S. 656, 662, 107 S.Ct. 2617, 2621, 96 L.Ed.2d 572 (1987). Because Massachusetts' statute of limitations for personal injury claims is three years, Mass.Gen.L. ch. 260, § 2A, and Johnson's section 1981 claim is based on alleged mistreatment taking place no more recently than 1980, his claim, when filed in 1991, was no longer ripe for review.

Johnson attempts to overcome this significant obstacle by resort to a continuing violation theory, arguing that any stat-

*Brown v. Trustees of Boston University,* 891 F.2d 337, 352 (1st Cir.1989).

**2.** While suggestive of the standard for dismissal under Fed.R.Civ.P. 12(b)(6), the standard under section 1915(d) is more rigorous. *See Street v. Fair,* 918 F.2d 269, 273 (1st Cir.1990) (per curiam) (complaint which failed to state a claim under Rule 12(b)(6) was, nevertheless, not "frivolous" within the purview of 28 U.S.C. § 1915(d), because the deficiencies therein could conceivably be cured by an amended complaint).

ute of limitations was tolled by reason of Harvard's ongoing discriminatory practices.[3] His complaint, however, is premised on disparate treatment, not disparate impact; there is no particularized claim that an overarching policy of discrimination imbedded in the university's hiring system persisted beyond 1980 and into the limitations period. Thus, Johnson cannot ground his putative cause of action on a so-called "systemic" violation. *See Jensen v. Frank,* 912 F.2d 517, 523 (1st Cir.1990); *Mack v. Great Atlantic and Pacific Tea Co.,* 871 F.2d 179, 183–84 (1st Cir.1989); *Johnson v. General Elec. Co.,* 840 F.2d 132, 136–37 & n. 5 (1st Cir.1988). The question thus becomes whether plaintiff successfully alleged a "serial" violation. *See Jensen,* 912 F.2d at 522–23; *Mack,* 871 F.2d at 183. We find that he did not.

■ According to the complaint, any discrimination practiced by Harvard transpired during a discrete period between November 1979 and January 1980. Absent an ability "to pinpoint even a single opportunity which was improperly foreclosed" by Harvard *during the limitations period,* Johnson's quest must fail. *Mack,* 871 F.2d at 183; *see also Jensen,* 912 F.2d at 522; *Goldman v. Sears, Roebuck & Co.,* 607 F.2d 1014, 1018 (1st Cir.1979), *cert. denied,* 445 U.S. 929, 100 S.Ct. 1317, 63 L.Ed.2d 762 (1980). Johnson's argument to the contrary "obfuscates what we have termed the 'critical distinction' between a continuing act and a singular act that brings continuing consequences in its roiled wake." *Gilbert v. Cambridge,* 932 F.2d 51, 58–59 (1st Cir.1991); *Altair Corp. v. Pesquera de*

*Busquets,* 769 F.2d 30, 32 (1st Cir.1985). The fact that Johnson may have suffered from the sting of his unhappy experience with Harvard in the years that followed the rejection of his several applications cannot justify extending the limitations period. On this record, there was no continuing violation.[4] *See, e.g., Jensen,* 912 F.2d at 522–23; *Mack,* 871 F.2d at 182–84; *Velazquez v. Chardon,* 736 F.2d 831, 833 (1st Cir.1984); *Goldman,* 607 F.2d at 1018–19.

Because the temporal hurdle was both apparent and insurmountable, the district court's recourse to 28 U.S.C. § 1915(d) was proper. Thus, the appellant's discrimination claim against Harvard was appropriately dismissed.

### C. *Claims Against State Defendants.*

■ Under 42 U.S.C. § 1983, an aggrieved individual may sue persons who, acting under color of state law, abridge rights, immunities, or privileges created by the Constitution or laws of the United States. *See Pittsley v. Warish,* 927 F.2d 3, 6 (1st Cir.1991). It is settled beyond peradventure, however, that neither a state agency nor a state official acting in his official capacity may be sued for damages in a section 1983 action. *See Will v. Michigan Dep't of State Police,* 491 U.S. 58, 71, 109 S.Ct. 2304, 2311, 105 L.Ed.2d 45 (1989); *Elliott v. Cheshire County,* 940 F.2d 7, 12 (1st Cir.1991). Indeed, MCAD, given its status as an arm of the Commonwealth of Massachusetts, is an altogether inappropriate defendant in this particular lawsuit. *See Quern v. Jordan,* 440 U.S. 332, 341, 99

---

**3.** Although this claim was not made below, we have nonetheless considered it. After all, when, as here, a district court dismisses an indigent's complaint *sua sponte* under 28 U.S.C. § 1915(d), the plaintiff's opportunities to raise points of this kind are truncated, and a court of appeals, in accommodating the rights of a *pro se* litigant, should recognize as much.

**4.** On July 11, 1991, well after this case had been briefed on appeal, the appellant filed a paper indicating that, during the period 1987–1991, he had applied for positions at various pharmacies operated by Harvard Community Health Plan, a health maintenance organization presumably sponsored by, or in some fashion affiliated with, Harvard University. This proffer is not proper-

ly before us and cannot be considered on appeal. *See, e.g., United States v. Kobrosky,* 711 F.2d 449, 457 (1st Cir.1983) (court of appeals cannot consider evidentiary materials not first proffered to the district court). If Johnson believes he has been treated in a discriminatory manner by the Health Plan, he can, of course, pursue whatever independent remedies may be available to him in respect to such conduct. *See, e.g., Sabree v. United Brotherhood of Carpenters and Joiners Local No. 33,* 921 F.2d 396, 399–402 (1st Cir.1990) (race-discrimination plaintiff may sue for discrimination occurring within limitations period even though his claims are time-barred as to previous acts of alleged discrimination).

S.Ct. 1139, 1145, 59 L.Ed.2d 358 (1979) (state administrative agency is immune from § 1983 action).[5] Consequently, the suit against the state defendants is insupportable as a matter of law except, perhaps, as against Rodriguez in his individual capacity. *See Kentucky v. Graham,* 473 U.S. 159, 165, 105 S.Ct. 3099, 3104, 87 L.Ed.2d 114 (1985) (distinguishing between a state official's individual and representative capacities); *Elliott,* 940 F.2d at 12 (similar); *Rosado v. Zayas,* 813 F.2d 1263, 1272 n. 5 (1st Cir.1987) (similar).

The claim against Rodriguez, individually, is not undermined by the passage of time, since MCAD's superintendence of Johnson's grievance lasted into 1989, and Johnson's suit was commenced in 1991, well within the three-year statute of limitations. *See generally Owens v. Okure,* 488 U.S. 235, 236, 109 S.Ct. 573, 574, 102 L.Ed.2d 594 (1989) (state's general personal injury statute of limitations governs § 1983 actions). But, the initiative faces other, equally serious problems.

To determine whether Johnson stated an actionable claim under section 1983 against Rodriguez, individually, we must first inquire if any of Johnson's federally-protected rights have been violated. Johnson argues that the state proceedings, for which he seeks to hold Rodriguez responsible, violated his right to procedural due process as guaranteed by the fourteenth amendment. He questions matters such as the delay in the processing of his grievance, the absence of Harvard's interviewer when his hearing was finally convened, and Rodriguez' unwillingness to explain more fully the basis for his finding of "no probable cause."

While the fourteenth amendment prohibits a state from "depriv[ing] any person of life, liberty or property without due process of law," U.S. Const. amend. XIV, it does not operate in a vacuum. Before reaching the question of whether the procedures attendant upon a claimed deprivation were constitutionally sufficient, we must ask "whether there exists a liberty or property interest which has been interfered with by the State." *Kentucky Dep't of Corrections v. Thompson,* 490 U.S. 454, 459, 109 S.Ct. 1904, 1908, 104 L.Ed.2d 506 (1989); *see also Newman v. Burgin,* 930 F.2d 955, 959 (1st Cir.1991); *Correa–Martinez v. Arillaga–Belendez,* 903 F.2d 49, 53 (1st Cir. 1990).

■ Johnson does not argue that he enjoyed a constitutionally protected property interest in a job which he never held. *Cf., e.g., Brennan v. Hendrigan,* 888 F.2d 189, 195 (1st Cir.1989) (probationary employee has no property interest in state employment). He focuses instead on the claimed existence of a cognizable liberty interest. Such interests are distinct and limited; they "must rise to more than an 'abstract need or desire.'" *Thompson,* 490 U.S. at 459, 109 S.Ct. at 1908 (quoting *Board of Regents v. Roth,* 408 U.S. 564, 571, 92 S.Ct. 2701, 2706, 33 L.Ed.2d 548 (1972)). To qualify as a liberty interest, and thus to invoke the procedural guarantees contained in the Due Process Clause, "a right or status previously recognized by state law [must be] distinctly altered or extinguished" by state action. *Paul v. Davis,* 424 U.S. 693, 711, 96 S.Ct. 1155, 1165, 47 L.Ed.2d 405 (1975). Generally, the alteration or extinction of a protected interest occurs when the state contravenes clear and unequivocal requirements and thus fails to satisfy either the federal Constitution or state law. *See Hewitt v. Helms,*

---

**5.** Johnson's contention that he is entitled to judicial review of MCAD's finding under the Administrative Procedure Act (APA), 5 U.S.C. § 701 *et seq.* (1988), is jejune. The statute is wholly inapposite. By its terms, the APA governs decisions by "each authority of the Government of the United States." 5 U.S.C. § 701(b)(1). It does not purport to affect the review processes of state agencies or commissions. *See City of Rohnert Park v. Harris,* 601 F.2d 1040, 1048 (9th Cir.1979) (APA does not create private cause of action against a municipal agency, not part of the federal government), *cert. denied,* 445 U.S. 961, 100 S.Ct. 1647, 64 L.Ed.2d 236 (1980). In citing cases holding that state agencies may seek judicial review of decisions by federal departments, *e.g., Maryland Dep't of Human Services v. Department of Health and Human Services,* 763 F.2d 1441 (D.C.Cir.1985), the appellant conflates two different propositions, and underscores the very fallacy of his argument.

459 U.S. 460, 472, 103 S.Ct. 864, 871, 74 L.Ed.2d 675 (1983).

■ In this case, there was no such interference. Johnson was afforded an investigation of his allegations and an opportunity to present his case before MCAD. Moreover, the record below establishes that the MCAD proceedings were conducted in full accordance with state law. To be sure, the proceedings moved at a snail's pace—but slowness in the decisionmaking process, without more, did not infract state law or otherwise impinge on a protected interest. Absent the denial of any right explicitly provided to Johnson under either the Constitution or state law, the deprivation of a liberty interest cannot be established.

In addition, Rodriguez' handling of the matter in no way precluded Johnson from taking the case to the state court system on his own. Massachusetts law provides that ninety days after MCAD receives the complaint, the complainant may file suit in the state superior court against the alleged discriminator. Mass.Gen.L. ch. 151B, § 9. While Johnson could not, under state law, have sought review of the MCAD finding *per se, see id.* § 5; *Christo v. Edward G. Boyle Ins. Agency, Inc.,* 402 Mass. 815, 818, 525 N.E.2d 643 (1988), he still possessed the opportunity to present his claim to a state tribunal. Given Johnson's option of filing suit in state court, it is even more difficult to imagine how the MCAD finding threatened any constitutionally protected interest. "Because a determination of [probable] cause is nonbinding and nonfinal, investigative and not adjudicative, we cannot say that the failure to receive such a determination represents any loss that implicates the Due Process Clause." *Francis–Sobel v. University of Maine,* 597 F.2d 15, 18 (1st Cir.) (EEOC finding does not give rise to a constitutional claim), *cert. denied,* 444 U.S. 949, 100 S.Ct. 421, 62 L.Ed.2d 319 (1979); *cf. Ortega–Rosario v. Alvarado–Ortiz,* 917 F.2d 71, 74 (1st Cir. 1990) ("It stretches the concept too far to suggest that a person is deprived of 'liberty' when he is simply not rehired in one job but remains as free as before to seek another.").

Our conclusion that Johnson was not deprived of a protected liberty interest necessarily ends the procedural due process inquiry. With no protected interest at stake, there can be no deprivation inconsistent with the fourteenth amendment. As we wrote on an earlier, comparable occasion: "Insofar as appellant's arguments are veiled attempts to obtain judicial review of the correctness of appellee's negative determination, it is clear that we have no power to provide redress." *Francis–Sobel,* 597 F.2d at 17.

### III. CONCLUSION

We need go no further. We believe that the district court was amply justified in dismissing Johnson's suit as frivolous. Although we strive to give the allegations of *pro se* plaintiffs the most careful consideration, and continue to urge trial judges to be cautious in acting *sua sponte* under 28 U.S.C. § 1915(d), we cannot in good conscience burden the courts with litigation that is plainly unmeritorious. Given his dilatoriness, Johnson should have understood from the time that he belatedly filed his federal court complaint that his pursuit of relief would necessarily be fruitless.

*Affirmed.*