**Brenda TATUM,**

v.

**COMMUNITY BANK.**

No. 1:94–MC–45.

United States District Court,
E.D. Texas,
Beaumont Division.

Oct. 24, 1994.

---

Brenda Tatum, pro se.

*MEMORANDUM AND ORDER ADOPTING MAGISTRATE JUDGE'S REPORT AND OVERRULING MOVANT'S OBJECTIONS*

JOE J. FISHER, District Judge.

Movant Brenda Tatum, proceeding pro se, brings a motion in which she requests *in forma pauperis* status and appointment of counsel in a proposed Title VII action against her former employer, Community Bank. Movant alleges racial discrimination was the reason for her employment termination.

On August 26, 1994, United States Magistrate Judge Earl S. Hines issued a Report and Recommendation after a hearing in which movant addressed her claim. Judge Hines recommended that movant be permitted to proceed *in forma pauperis,* but that appointment of counsel be denied for lack of a meritorious claim.

Movant filed objections to the magistrate judge's report on September 12, 1994.

This court has engaged in a *de novo* review of movant's objections, the magistrate judge's report, the record, pleadings, and all other available evidence. For reasons expressed herein, the magistrate judge's report and recommendation will be adopted, and movant's objections overruled.

**THE MAGISTRATE JUDGE'S REPORT**

The magistrate judge reported movant had insufficient assets to hire an attorney and had made a "reasonably diligent effort under the circumstances to obtain counsel." *See Bradshaw v. Zoological Society,* 662 F.2d 1301 (9th Cir.1981); *Caston v. Sears, Roebuck, & Co.,* 556 F.2d 1305 (5th Cir.1977). However, the magistrate judge found movant had established a prima facie case under Title VII because she is a racial minority, she was qualified for her job as a bookkeeper, she was discharged from her position, and she was replaced by a white female. *Barnes v. Yellow Freight Systems,* 778 F.2d 1096 (5th Cir.1985). The respondent, however, presented several race-neutral reasons for movant's termination, which followed movant's initial probationary period of ninety days. These reasons included that movant wore headphones at work, exhibited inappropriate behavior and angry outbursts to co-workers and supervisors, and excessive absenteeism. This absenteeism included four absences in ninety days, all occurring on a Friday or a Monday. The respondent also presented a list of three other employees terminated for excessive absenteeism and inadequate performance between 1990 and 1992, all of whom were white.

The magistrate judge concluded that movant had failed to demonstrate that these reasons were a pretext to mask a racially motivated reason for her termination. *See id.* at 1101.

**OBJECTIONS**

Movant objects to the magistrate judge's recommendation that she be denied appointment of counsel. She argues that she has presented a meritorious claim because "any-

time a case involves the firing or discharge of an employee for no apparent reason had [sic] to be discrimination." Movant bolsters her argument by reiterating that her termination for lack of communication with her colleagues was merely a pretext, and that the real reason she was fired was on the basis of her race.

## DISCUSSION

There is no doubt movant has made a prima facie case for discrimination, but there is no evidence of racially motivated intent to support her claim. It is not enough for movant to base her claim for the appointment of an attorney on the grounds that "[a]n attorney should have been paid for by the county because of being poor [sic] and I am a Black female overweight and over 30 years of age."

The record in this case reveals that the only alleged evidence proffered by the movant to support her claim of racial discrimination is that her supervisors made non-racial but derogatory comments about her, including that she was an "airhead." Movant alleges that several of her co-workers live in predominantly white areas including Vidor, Texas, and therefore may have preconceived notions of race. Such allegations do not support a showing of racially discriminatory intent in the employer's decision to terminate.

Movant's objections likewise offer no other reason to support her claim of pretextual termination. It is not enough to assert that merely because she is a "black female," she was fired on the basis of her race. Subjective belief and speculation cannot support a basis for judicial relief. *See Hornsby v. Conoco,* 777 F.2d 243 (5th Cir.1985). Therefore, movant has failed to demonstrate a reasonable likelihood of success meriting the appointment of an attorney. When one weighs the respondent's rationale with the movant's, it is clear she has not overcome her burden.

Accordingly, the findings of fact & conclusions of law of the magistrate judge are correct, the report of the magistrate judge is **ADOPTED** and movant's objections are **OVERRULED.** It is therefore

**ORDERED** and **ADJUDGED** that movant's motion to proceed *in forma pauperis* is **GRANTED.** It is further

**ORDERED** and **ADJUDGED** that movant is **GRANTED** a reasonable period of time, up to and including November 30, 1994, within which to file her Title VII complaint on a *pro se* basis or through privately retained counsel, if she wishes to proceed. It is further

**ORDERED** and **ADJUDGED** that movant's motion for appointment of counsel is **DENIED.**

Failure of movant to proceed within such time will result in the automatic termination of this proceeding without the necessity of further order of the Court.

SIGNED this 20 day of October, 1994.

## *REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE*

HINES, United States Magistrate Judge.

Brenda Tatum filed a motion in which she requests *in forma pauperis* status and appointment of counsel in a proposed Title VII (employment discrimination) suit.[1] Ms. Tatum proposes suit against her former employer, Community Bank, charging discrimination due to race and color (Black).

The motion was referred to the undersigned for hearing and issuance of a report and recommendation as to whether the motion should be granted. A hearing was convened at 2:15 p.m. on August 9, 1994 in Beaumont, Texas at the Jack Brooks Federal Building. The movant, Brenda Tatum, appeared to present her motion and respond to questions.

Prior to the hearing, the court ordered movant to produce for the court's inspection

---

1. Title VII provides that "[u]pon application by the complainant and in such circumstances as the court may deem just, the court may appoint an attorney for such complainant and may au-

thorize the commencement of the action without the payment of fees, costs, or security." 42 U.S.C. § 2000e–5(f)(1).

**994**

a copy of her Equal Employment Opportunity ("EEO") investigative file. The EEO file was received by the court on July 18, 1994 and reviewed prior to the hearing. This report is based upon movant's complete court file, the EEO investigative file, movant's testimony and documentation provided at the hearing, and correspondence following the hearing.

## I.

### The Threshold Question: Is The Motion Moot Because The Claim Is Barred By Limitations?

It is appropriate first to examine whether movant's claim is time barred. If so, an examination of the merits of her motion for appointment of counsel would be purely academic.

■ Under Title VII, individuals are required by statute to file their complaint in Federal Court within 90 days after the Commission has given notice to them that it has not filed a civil action. 42 U.S.C. § 2000e–5(f)(1). The beginning of the 90–day period of limitations begins to run on the date that the EEOC right-to-sue letter is delivered to the claimant. *Ringgold v. National Maintenance Corp.*, 796 F.2d 769 (5th Cir.1986). Where there is an ambiguity as to when notice is given, courts recognize that the 90 days begin to run when the aggrieved party knows EEOC has completed its efforts. *Zambuto v. American Telephone and Telegraph Co.*, 544 F.2d 1333 (5th Cir.1977).

In this case, movant received a letter from the EEOC dated February 25, 1994, informing her that she had the right to sue the respondent within ninety days of receipt of the notice. Thus, movant had until at least May 26, 1994 to file her Title VII complaint in federal court. Movant submitted her motion and proposed complaint on May 20, 1994, and therefore, her Title VII suit is not barred by limitations.

## II.

### In Forma Pauperis Application

■ In *Adkins v. E.I. DuPont de Nemours & Co., Inc.*, 335 U.S. 331, 69 S.Ct. 85, 93 L.Ed. 43 (1948), it was held that one need not be absolutely destitute to enjoy the benefit of proceeding *in forma pauperis*. An affidavit to proceed *in forma pauperis* is sufficient if it states that one cannot because of her poverty afford to pay for the costs of litigation and still provide for herself and any dependents. *Id.* at 339, 69 S.Ct. at 89.

■ Ms. Tatum has made a sufficient showing of poverty. In her sworn *in forma pauperis* affidavit, movant testified that she been unemployed since her termination on October 9, 1992. Movant receives $163.00 per month in AFDC benefits, and a $385.00 per month subsidy from the Beaumont Housing Authority.

Movant reports that she has no cash, no checking account, and no savings account. Movant resides with her fourteen year old daughter, Patience McHenry.

These facts favor granting movant's motion to proceed *in forma pauperis*.

## III.

### Motion for Appointment of Counsel

#### A. Governing Principles

■ A Title VII plaintiff has no absolute right to an appointed counsel. Rather, the decision of whether to provide counsel lies solely within the discretion of the court. *See Caston v. Sears, Roebuck and Co.*, 556 F.2d 1305 (5th Cir.1977); *Neal v. IAM Local Lodge 2386*, 722 F.2d 247 (5th Cir.1984); and *Gonzalez v. Carlin*, 907 F.2d 573 (5th Cir. 1990). Governing circuit law indicates that in the exercise of its discretion, the district court should consider the following relevant factors:

1) Whether the complainant has the financial ability to retain counsel;

2) Whether the complainant has made a diligent effort to retain counsel; and

3) Whether the complainant has a meritorious claim.

These factors were first enumerated in *Caston v. Sears, Roebuck & Company, supra*. They were reconfirmed in *Neal v. IAM Local Lodge 2386, supra*, and *Gonzalez v. Carlin, supra*.

■ Finally, the court must be sensitive toward and innovative in dealing with problems faced by *pro se* Title VII litigants. The court should remember nevertheless that (a) the *movant* has the burden of persuasion with regard to the application for appointment of counsel; and (b) any appointed counsel will serve entirely without compensation unless the suit is successful and attorney's fees are awarded (*See* 42 U.S.C. § 2000e–5(k)). In general, then, the circumstances under which a Title VII litigant is entitled to an appointed counsel are limited. Succeeding sections of this report analyze whether those circumstances are present in this case.

## B. *Ability to Afford an Attorney*

■ In analyzing this factor, a substantial showing of poverty as required to proceed *in forma pauperis* is not required. *Ivey v. Board of Regents,* 673 F.2d 266 (9th Cir.1982). There need only be insufficient assets and income to enable Ms. Tatum to afford an attorney to investigate and file her claims. Since movant has met the heavier burden to proceed *in forma pauperis,* it follows that she has met the requirement of indigency to necessitate a favorable finding on this factor.

## C. *Efforts to Secure Counsel*

■ To be eligible for appointed counsel, movant must make "a reasonably diligent effort under the circumstances to obtain counsel." *Bradshaw v. Zoological Society of San Diego,* 662 F.2d 1301 (9th Cir.1981); *Caston,* 556 F.2d at 1309. The *Caston* case suggests that a significant inquiry on this issue is whether the complainant has pursued the possibility of a contingent fee arrangement in her efforts or attempts to locate an attorney. *Id.*

■ At the hearing, Ms. Tatum testified that she had contacted Fritz Miller and several other attorneys suggested by the Jefferson County Bar association. In her subsequent correspondence, Ms. Tatum provided the names of Doug Barlow, Don Duesler, Jack Laverne, and Thomas Roebuck. Although Ms. Tatum did not recall discussing a contingent fee specifically, she stated that the attorneys told her she would need to pay $300.00 to $500.00 prior to receiving representation.

Ms. Tatum's actions indicate that she was reasonably diligent in her efforts to secure counsel. Therefore, the analysis on this factor points in favor of granting the motion.

## D. *The Merits of the Case*

■ Examination of potential merits is most important, considering the unfairness of imposing involuntary servitude upon a member of the bar in a patently frivolous case. This factor also is the most difficult to apply.

■ When considering the merits, the determination reached by the EEOC should not be ignored. On the other hand, the court cannot give preclusive effect to the EEOC determination. The court should inquire as to the validity of the EEOC's determination. *Caston,* 556 F.2d at 1309. In this regard, findings that the EEOC determination is supported by substantial evidence in the investigative file and that movant's objections thereto are frivolous would weight heavily against appointing an attorney. *Caston,* 556 F.2d at 1309.

■ Examination of the merits *sua sponte* before the defendant has been required to answer is akin to a frivolousness review of a general *in forma pauperis* proceeding. *See* 28 U.S.C. § 1915(d). The procedure cannot serve as a factfinding process for the resolution of disputed facts. *Denton v. Hernandez,* —— U.S. ——, ——, 112 S.Ct. 1728, 1733, 118 L.Ed.2d 340 (1992).

■ Reduced to simplest terms, frivolous suits are those without an arguable basis in law or fact. *Neitzke v. Williams,* 490 U.S. 319, 325, 109 S.Ct. 1827, 1831–32, 104 L.Ed.2d 338 (1989). Thus, the duty to screen for frivolousness includes responsibilities to determine first whether the case is based on a recognized legal theory, and second, to make an initial assessment of the movant's factual allegations in light of what movant must eventually prove at trial if movant is to recover on that theory. The court may not construct arguments or legal theories for the plaintiff, but the plaintiff's complaint is to be

construed liberally when, as here, the plaintiff is *pro se. See Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 595, 30 L.Ed.2d 652 (1972). *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976).

 The initial assessment of plaintiff's alleged facts must be weighted in plaintiff's favor, i.e. the court must accept as true the facts alleged by plaintiff unless they rise to the level of the irrational or the wholly incredible. *Denton,* ── U.S. at ──, 112 S.Ct. at 1733. Weighting in plaintiff's favor also means indulging all reasonable inferences in movant's behalf. *See Johnson v. Rodriguez,* 943 F.2d 104, 107 (1st Cir.1991), interpreting *Neitzke, supra.* Therefore, if plaintiff's alleged facts are not clearly baseless, and if proven they would support a recognized legal theory of recovery, plaintiff must be given an opportunity to commence the action, irrespective of costs.

### 1. Background

Movant was hired on July 17, 1992 as a bookkeeper. Pursuant to respondent's policy, she was to serve a probationary term until October 15, 1992. On October 9, 1992, prior to completing her probationary period, movant was dismissed for "lack of interacting—not communicating with others."

### 2. Movant's Contentions

Movant contends that termination occurred due to her race. Movant states that she is "darker" than other black people. Only two of the other seventeen employees in her department are black. None are in decision-making positions. Furthermore, movant contends that most employees in her department were from "all-white" cities—Vidor, Lumberton, and Mauriceville. Most importantly, her supervisor, Brenda Shelley, is from Vidor.[2]

Movant contends that Ms. Shelley gave movant one day of training. Then, she was left to learn the requirements of her job on her own. Movant states that Ms. Shelley did not want to answer movant's questions and was very impatient with her. Movant addi-

tionally complains that other employees, particularly "Michelle," called movant an "airhead."

Movant further contends that she had prior experience working for Bank of America, Wells Fargo and First City Bank. She had never been fired. She has a high school education with two years of college at Texas Southern University, and ten years of banking experience. Nevertheless, Ms. Shelley told movant that "Donna," a less educated employee, was the head clerk, despite the fact that movant believed Donna to be less qualified.[3] Movant believes Donna received this position because she is white.

Movant states that Ms. Shelley told her on several occasions that she was doing a good job. Movant can surmise no reason for her termination other than racial discrimination. Movant adds, however, that she believes that Ms. Shelley was intimidated by movant's experience in the banking industry.

### 3. Respondent's Position

The employer is not yet before the court. In the capacity of respondent in the EEOC proceedings, the employer asserted that there was no discrimination involved in the actions taken toward movant, but instead, movant was terminated due to attitude and absenteeism.

On August 12, 1992, Ms. Shelley allegedly counseled movant regarding an "attitude problem," in that movant sat with her back turned to her co-workers and spoke with them rarely. Movant denied having a problem with co-workers, although Ms. Shelley contends that she witnessed an angry outburst.

On August 20, 1992, Ms. Shelley talked to movant regarding the wearing of headphones while she worked. Ms. Shelley states that movant responded with a very sullen attitude the rest of the day, and was non-cooperative with fellow employees.

On August 21, 1992, Ms. Shelley contends that she counseled movant and warned her about attitude problems and getting along

---

**2.** Movant complains that Ms. Shelley "lives, breathes, and talks Vidor."

**3.** Movant complains that she believes she was supposed to be "submissive" to Donna.

with fellow employees. Movant was given a written warning for attitude problems, which she refused to sign. Movant reportedly became upset and spoke very loudly.

As respondent, the employer contends that movant's attitude problems include angry outbursts, non-cooperation with fellow employees, and other inappropriate behavior. In addition, respondent states that movant was excessively absent from work. Each of movant's absences occurred on a Monday or Friday (3 Mondays and 1 Friday). Movant was given no counseling regarding absenteeism. Respondent states that there was not time to do so, as movant's fourth absence occurred during the week of her termination.

Finally, respondent supplied a list of three other employees who were terminated for inadequate performance and absenteeism between 1990 and 1992. All were white.

### 4. Movant's Response

Movant does not remember being counseled on the three occasions listed by respondent. She does recall being talked to regarding the headphones. Movant states that when she was hired, she was told that she could listen to the radio. She contends that even though she wore headphones, she was able to answer the telephone and perform her job duties. Otherwise, movant contends that she was counseled only one time—*after* being fired.

Movant does not recall whether she was absent four times or not. She states that Ms. Shelley maintained a very relaxed attitude regarding absenteeism.[4] Therefore, no one ever said anything about her absences, and she was never counseled about this problem.

Movant does admit that Ms. Shelley stressed the importance of all of the employees getting along, because they worked in very close quarters. Movant states that she was very busy at work and could not socialize often in an effort to avoid overtime. However, she adds that she occasionally rode home

---

[4]. In fact, movant contends that Ms. Shelley informed her that it was all right to be late, as Ms.

with Ms. Shelley or "Sharon," and that she did not know that a problem existed.

### 5. EEOC Determination

On February 25, 1994, the EEOC issued a determination stating that:

> Examination of the evidence indicates that the Charging Party was counseled on more than one occasion regarding attitude problems and the importance of getting along with co-workers. Testimonial evidence reflects that the Charging Party took conversations out of context and accused co-workers of talking about her. Additionally, there were several emotional outbursts from the Charging Party. Attendance records reflect that the Charging Party was absent on four occasions, all being on a Monday or Friday. Charging Party was terminated during the 90 day probationary period. Documentary evidence reflects that non-Blacks have also been terminated for the same or similar reasons as was Charging Party. Based on this analysis, I have determined that the evidence obtained during the investigation does not establish a violation of the statute.

### 6. Discussion and Analysis

#### a. General principles of analysis

■ Movant's claim is in the nature of one claiming disparate treatment, rather than disparate impact, because it does not involve an affected class; rather, it involves only one movant, alleging discrimination due to race. *Barnes v. Yellow Freight Systems,* 778 F.2d 1096 (5th Cir.1985).

■ In disparate treatment cases, plaintiffs may make out a prima facie case of discrimination under Title VII by showing that: (1) they belong to a racial minority; (2) they were qualified for the job from which they were discharged or from which they were not hired; (3) they were discharged or not hired; and (4) the employer filled the position in question with a non-minority person. *Barnes, supra,* citing *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct.

Shelley often was.

1817, 1824, 36 L.Ed.2d 668, 677 (1973). Plaintiffs may also, however, use other methods of proof from which courts may infer the employer's intent to discriminate. *Plemer v. Parsons–Gilbane*, 713 F.2d 1127, 1135 (5th Cir.1983).

■ After plaintiff establishes a prima facie case, the burden shifts to the defendant to rebut the presumption of discrimination by producing evidence of a nondiscriminatory reason for its actions. *Barnes*, 778 F.2d at 1099. The defendant's explanation of its legitimate reasons must be clear and reasonably specific. *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 258, 101 S.Ct. 1089, 1096, 67 L.Ed.2d 207 (1981). This obligation arises both from the necessity of rebutting the inference of discrimination arising from the prima facie case and from the requirement that plaintiff be afforded a full and fair opportunity to demonstrate pretext. *Id.*

■ Merely demonstrating pretext, however, is insufficient. The district court must decide which party's explanation of the employer's motivation it believes. *U.S. Postal Service Bd. of Governors v. Aiken*, 460 U.S. 711, 716, 103 S.Ct. 1478, 1482, 75 L.Ed.2d 403 (1983). It is not enough, in other words, to disbelieve the employer; the factfinder must believe the plaintiff's explanation of intentional discrimination. *St. Mary's Honor Center v. Hicks*, —— U.S. ——, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).

■ Ultimately, the essential fact question in any employment discrimination case in which the movant alleges disparate treatment is "not whether the movant has established a prima facie case or demonstrated pretext, but whether the defendant has discriminated against the plaintiff." *Armstrong v. City of Dallas*, 997 F.2d 62 (5th Cir.1993). A plaintiff alleging disparate treatment in a Title VII action has the burden of proving discriminatory intent. *Barnes v. Yellow Freight Systems, Inc.*, 778 F.2d at 1101 citing *Burdine, supra.* Intent can usually only be inferred from circumstantial evidence. *Id.*

### b. Application to movant

■ Movant satisfies the requirements for a prima facie case under Title VII. Movant is a racial minority; she was qualified for a job as bookkeeper; she was discharged; and she was replaced by a white female (name unknown). Respondent, however, presents race-neutral reasons for movant's termination. Thus, movant must demonstrate further that the reason given by the employer for her termination was only pretext for racial discrimination.

Respondent cites a series of counseling and warnings leading up to movant's termination. While movant contends that she did not receive each of these warnings, it is evident that several conversations involving the same subject occurred between Ms. Shelley and movant.

■ The burden of showing discrimination due to race or color under Title VII is difficult. Evidence of unfair treatment is not sufficient. Instead, there must be some showing that the unfair treatment was based upon a protected category, in this case race or color. Violations of collective bargaining agreements, unfair treatment, or even malicious or vindictive actions are not actionable under Title VII in the absence of discrimination based upon the protected classifications, i.e. race, sex, or national origin.

Here, the thrust of movant's complaint is that Ms. Shelley acted unfairly in her treatment toward movant. Movant states that Ms. Shelley did not train her or treat her well. Nevertheless, movant's only evidence that such treatment was racially motivated is the fact that Ms. Shelley and other employees live in Vidor and similar areas. Respondent counters with a series of disciplinary problems and documentation of white workers who were treated similarly.

The fact that another employee referred to movant as an "airhead" does not constitute racial discrimination by the employer. Nor does the fact that another already tenured employee was considered the head clerk, given the fact that movant was still on her probationary period.

Movant adds in her correspondence filed after the hearing that Ms. Shelley told her

that "several of her friends were Black," and that she entertained Blacks in her home. While these comments may indicate that Ms. Shelley maintained certain attitudes about people based upon race, it is not sufficient, by itself, to establish that movant's termination was based upon her race.

■ Under the circumstances, movant has not shown that her problems were based on race or color. Objectively viewed, all that movant has presented is her subjective belief that she has been treated differently due to race or color. Her testimony is devoid of specific objective incidents of racial remarks regarding movant or her work or favoritism to non-minority employees. Indeed, plaintiff's own words were that she could conceive of no reason *other* than racial discrimination for the actions taken against her. Courts cannot allow subjective belief and speculation to be the basis for judicial relief, particularly when, as here, an adequate, non-discriminatory reason is presented for the employer's actions. *See Hornsby v. Conoco*, 777 F.2d 243 (5th Cir.1985).

Movant has failed to demonstrate pretext or otherwise proved discrimination. Thus, she has failed to make a substantial showing of a reasonable likelihood of success. The facts alleged by movant are insufficient to sustain a claim under Title VII.

## E. *Conclusion of Appointment of Counsel Analysis*

Movant has shown that she cannot afford an attorney, and that she has made diligent attempts to obtain one. Thus, two of the three factors for appointment of counsel favor her.

However, as noted above, the merits of this case do not indicate a substantial likelihood of success. Title VII does not vest the court with authority to pay appointed counsel. Thus, counsel should not be required to donate time for a cause which has little or no merit. Therefore, these facts favor denying movant's motion for appointment of counsel.

### *Recommendation*

Movant's motion to proceed *in forma pauperis* should be granted.

Movant's motion for appointment of counsel should be denied.

### *Objections*

Within ten (10) days after receipt of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge. 28 U.S.C.A. § 636(b)(1)(C) (West Supp.1985).

Failure to file written objections to the proposed findings and recommendations contained in this report within ten days after service shall bar an aggrieved party from *de novo* review by the district court of the proposed findings and recommendations and from appellate review of factual findings accepted or adopted by the district court except on grounds of plain error or manifest injustice. *Rodriguez v. Bowen*, 857 F.2d 275 (5th Cir.1988).

SIGNED this 26 day of August, 1994.