**Beverly LEE**

v.

**UNITED STATES POSTAL SERVICE, et al.**

**No. 1:94–MC–58.**

United States District Court, E.D. Texas, Beaumont Division.

April 11, 1995.

Beverly Lee, pro se.

## REPORT AND RECOMMENDATION REGARDING DENIAL OF MOTION FOR APPOINTMENT OF COUNSEL

HINES, United States Magistrate Judge.

Pending is Beverly Lee's motion for appointment of counsel in a proposed Title VII employment discrimination suit.[1] Ms. Lee proposes suit against her employer, the United States Postal Service and Marvin Runyon, the Postmaster General,[2] for racial discrimi-

---

1. Title VII provides that "[u]pon application by the complainant and in such circumstances as the court may deem just, the court may appoint an attorney for such complainant and may authorize the commencement of the action without the payment of fees, costs, or security." 42 U.S.C. § 2000e–5(f)(1). On November 22, 1994, this court denied Lee's request for *in forma pauperis status*, based on a recommendation of the undersigned United States magistrate judge, filed October 21, 1994. Ms. Lee subsequently paid the filing fee for her action. However, her motion for appointed counsel appears to be pending.

2. Movant seeks to sue Runyon in his official capacity, rather than for any individual acts.

nation pursuant to incidents that occurred in March of 1993.

The motion was referred to the undersigned for hearing and issuance of a report and recommendation as to whether the motion should be granted. A hearing was convened at 2:15 p.m. on October 4, 1994 in Beaumont, Texas at the Jack Brooks Federal Building. The movant appeared to present evidence.

Prior to the hearing, the court ordered movant to produce for the court's inspection a copy of her Equal Employment Opportunity Commission ("EEOC") investigative file. The EEOC file and determination were received on October 19, 1994, and movant provided a transcript of her hearing. This report is based on movant's complete court file, including the EEOC file, the EEOC transcript, movant's testimony and documentation provided at the hearing, and correspondence following the hearing.

## I. The Threshold Question: Is The Motion Moot Because The Claim Is Barred By Limitations?

It is appropriate first to examine whether movant's claim is barred by time. If so, an examination of her motion's merits would be purely academic.

■ Under Title VII, individuals suing the Federal Government, as here, are required by statute to file their complaint in federal court within ninety days after the EEOC has given notice of final agency action. 42 U.S.C. § 2000e–16. The beginning of the 90–day period of limitations begins to run on the date that a EEOC right-to-sue letter is delivered to the claimant. *Ringgold v. National Maintenance Corp.*, 796 F.2d 769 (5th Cir. 1986). Where there is an ambiguity as to when notice is given, courts recognize that the ninety days begin to run when the aggrieved party knows EEOC has completed its efforts. *Zambuto v. American Telephone & Telegraph Co.*, 544 F.2d 1333 (5th Cir. 1977).

In this case, the EEOC letter was dated May 6, 1994 and received May 9, 1994. Thus, movant had until at least August 9, 1994 to file her proposed Title VII complaint in federal court. Movant submitted her motion and proposed complaint on August 3, 1994. Therefore, her Title VII suit is not barred by time limitations.

## II. Discussion

### A. Title VII

■ A Title VII plaintiff has no absolute right to an appointed counsel. Rather, the decision of whether to provide counsel lies solely within the discretion of the court. Governing circuit law indicates that in the exercise of its discretion, the district court should consider the following relevant factors:

1) Whether the complainant has the financial ability to retain counsel;

2) Whether the complainant has made a diligent effort to retain counsel; and

3) Whether the complainant has a meritorious claim.

*Gonzalez v. Carlin*, 907 F.2d 573 (5th Cir. 1990); *Neal v. IAM Local Lodge 2386*, 722 F.2d 247 (5th Cir.1984); *Caston v. Sears, Roebuck & Co.*, 556 F.2d 1305 (5th Cir.1977).

■ Finally, the court must be sensitive and innovative when it confronts the problems faced by *pro se* Title VII litigants. The court should remember nevertheless that (a) the *movant* has the burden of persuasion with regard to the application for appointment of counsel; and (b) any appointed counsel will serve entirely without compensation unless the suit is successful and attorney's fees are awarded. *See* 42 U.S.C. § 2000e–5(k). In general, then, the circumstances under which a Title VII litigant is entitled to an appointed counsel are limited. Succeeding sections of this report analyze whether those circumstances are present in this case.

### B. Ability to Afford an Attorney

■ In analyzing this factor, a substantial showing of poverty as required to proceed *in forma pauperis* is not required. *Ivey v. Board of Regents*, 673 F.2d 266 (9th Cir. 1982). There need only be insufficient assets and income to enable movant to afford an attorney to investigate and file her claim. Movant has not met the heavier burden to

proceed *in forma pauperis.* Additionally, she has not met the burden of showing she has insufficient assets.

■ Movant is employed with the United States Postal Service and maintains an estimated annual salary of $35,000. Movant's husband likewise is employed by the Postal Service, at approximately the same salary. She reported no outstanding debts, has begun a small business from her home, and owns three vehicles, albeit financed. It does not appear movant would be unduly burdened by the expense of private counsel given her steady income stream and lack of any marked liabilities.

## C. *Efforts to Secure Counsel*

■ To be eligible for appointed counsel, plaintiff must make "a reasonably diligent effort under the circumstances to obtain counsel." *Bradshaw v. Zoological Soc'y,* 662 F.2d 1301 (9th Cir.1981); *Caston,* 556 F.2d at 1309. *Caston* suggests a significant inquiry on this issue is whether the complainant has pursued the possibility of a contingent fee arrangement in her efforts to locate an attorney. *Id.*

■ At the hearing, movant testified that she spoke with a screening secretary at one firm and discussed the possibility of a contingency fee. She further testified she had contacted two other attorneys by telephone and never received a response to her inquiries.

Movant has never met with an attorney regarding her case. She has not pursued the formation of an attorney-client relationship with the latter two attorneys contacted, and she does not know the disposition of her inquiries with them. Movant's actions indicate that she was not reasonably diligent in her efforts to secure counsel. Therefore, the analysis of this factor does not counsel for grant of the motion.

## D. *The Merits of the Case*

■ Examination of potential merits is most important, considering the unfairness of imposing service upon a member of the bar ·in a patently frivolous case. This factor also is the most difficult to apply.

■ When considering the merits, the determination reached by the EEOC should not be ignored. On the other hand, the court cannot give preclusive effect to the EEOC determination. The court should inquire as to the validity of the EEOC's determination. *Caston,* 556 F.2d at 1309. In this regard, findings that the EEOC determination is supported by substantial evidence in the investigative file would weigh heavily toward appointing an attorney.

■ Examination of the merits *sua sponte* before the defendant has been required to answer is akin to a frivolousness review of a general *in forma pauperis* proceeding. *See* 28 U.S.C. § 1915(d). The procedure cannot serve as a fact finding process for the resolution of disputed facts. *Denton v. Hernandez,* 504 U.S. 25, 32, 112 S.Ct. 1728, 1733, 118 L.Ed.2d 340 (1992).

■ Reduced to simplest terms, frivolous suits are those without an arguable basis in law or fact. *Neitzke v. Williams,* 490 U.S. 319, 325, 109 S.Ct. 1827, 1831–32, 104 L.Ed.2d 338 (1989). Thus, the duty to screen for frivolousness includes responsibilities to determine first whether the case is based on a recognized legal theory, and second, to make an initial assessment of the plaintiff's factual allegations in light of what plaintiff must eventually prove at trial if plaintiff is to recover on that theory. The court may not construct arguments or legal theories for the plaintiff, but the plaintiff's complaint is to be construed liberally when, as here, the plaintiff is *pro se. See Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

■ The initial assessment of plaintiff's alleged facts must be weighted in plaintiff's favor, that is, the court must accept as true the facts alleged by plaintiff unless they rise to the level of the irrational or the wholly incredible. *Denton,* 504 U.S. at ——, 112 S.Ct. at 1733. Weighing in plaintiff's favor also means indulging all reasonable inferences in plaintiff's behalf. *See Johnson v. Rodriguez,* 943 F.2d 104, 107 (1st Cir.1991). Therefore, if plaintiff's alleged facts are not clearly baseless, and if proven they would support a recognized legal theory of recov-

ery, the plaintiff must be given an opportunity to commence the action, irrespective of costs.

### 1. Movant's Contentions

Movant contends that in March of 1993, she left work because she felt ill. She stated her departure immediately followed a verbal altercation with her supervisor, Ms. Laura Pittman. She stated Ms. Pittman may have thought movant was "faking" her illness, and leaving work in retaliation. Ms. Pittman subsequently demanded movant provide documentation of a physician's visit and cited movant for being absent from work without permission ("AWOL"). This resulted in a seven-day suspension in May of 1993 for "failure to submit medical documentation." Movant reported that another employee, a white male named Wayne Dotson, had received sick leave and his explanation for his absence had been accepted without documentation.[3]

### 2. Respondent's Position and EEOC Finding

By letter dated May 6, 1994, the United States Postal Service, EEO Complaints Processing Center, informed movant that her complete case file had been reviewed and "the evidence of record does not support [her] allegation of discrimination based on retaliation, race, or sex." Respondent's position at the EEOC hearing was that the relationship between movant and Ms. Pittman suffers not due to racial animus, but because of personal animosity. Furthermore, respondent contended that to the extent Pittman was acting in retaliation for movant's union activities, such activities are not protected by Title VII, but by other, independent provisions of federal law. In support of this contention, respondent presented evidence that other employees, who were white males or were not otherwise members of a protected class, had been cited or disciplined for the same activity as movant, a black female.

### 3. Discussion and Analysis

#### a. General principles of analysis

■ Movant's claim is in the nature of one claiming disparate treatment, rather than disparate impact, because it does not involve an affected class; rather, it involves only one movant, alleging discrimination due to race. *Barnes v. Yellow Freight Systems,* 778 F.2d 1096 (5th Cir.1985).

■ In disparate treatment cases, plaintiffs may make out a prima facie case of discrimination under Title VII by showing that: (1) they belong to a racial minority; (2) they were qualified for the job from which they were discharged or from which they were not hired; (3) they were discharged or not hired; and (4) the employer filled the position in question with a nonminority person. *Barnes, supra,* citing *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668, 677 (1973). Plaintiffs may also, however, use other methods of proof from which courts may infer the employer's intent to discriminate. *Plemer v. Parsons–Gilbane,* 713 F.2d 1127, 1135 (5th Cir.1983). In the context of this movant, however, the question is whether she was subject to suspension, or an adverse employment action, rather than hiring or permanent discharge, on the basis of race.

■ After plaintiff establishes a prima facie case, the burden shifts to the defendant to rebut the presumption of discrimination by producing evidence of a nondiscriminatory reason for its actions. *Barnes,* 778 F.2d at 1099. The defendant's explanation of its legitimate reasons must be clear and reasonably specific. *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 258, 101

---

**3.** Plaintiff was removed from her employment in February 1994 due to an incident where she allegedly left her time card at an inappropriate site. However, movant successfully contested her removal before the Southwest Area Labor Relations Processing Board ("SALRPB"). As a condition of re-employment, she waived any legal claim she had regarding this incident. See Letter from Beverly Lee, No. 1:94–MC–58 (filed October 11, 1994) (attached determination of SALRPB, of July 21, 1994, in which the "resolution is contingent upon grievant's withdrawal of her EEO complaint, Unfair Labor·Charge, or any other complaint pertaining to the facts or circumstances of this case.") Consequently, the only claim before the court is the "AWOL" citation. All incidents pertinent to this case occurred before or during April, 1993.

S.Ct. 1089, 1096–97, 67 L.Ed.2d 207. This obligation arises both from the necessity of rebutting the inference of discrimination arising from the prima facie case and from the requirement that plaintiff be afforded a full and fair opportunity to demonstrate pretext. *Id.*

■ Merely demonstrating pretext, however, is insufficient. The district court must decide which party's explanation of the employer's motivation it believes. *U.S. Postal Service Bd. of Governors v. Aikens,* 460 U.S. 711, 716, 103 S.Ct. 1478, 1482, 75 L.Ed.2d 403 (1983). It is not enough, in other words, to disbelieve the employer; the factfinder must believe the plaintiff's explanation of intentional discrimination. *St. Mary's Honor Center v. Hicks,* —— U.S. ——, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).

■ Ultimately, the essential fact question in any employment discrimination case in which the movant alleges disparate treatment is "not whether the movant has established a prima facie case or demonstrated pretext, but whether the defendant has discriminated against the plaintiff." *Armstrong v. City of Dallas,* 997 F.2d 62 (5th Cir.1993). A plaintiff alleging disparate treatment in a Title VII action has the burden of proving discriminatory intent. *Barnes v. Yellow Freight Systems, Inc.,* 778 F.2d at 1101 (citing *Burdine, supra* ). Intent can usually only be inferred from circumstantial evidence. *Id.*

#### b. Application to movant

When questioned as to the reason why Ms. Pittman would cite her for being AWOL, and fail to cite another employee under similar circumstances, movant testified she "feels it is most definitely because of her activity as a union steward." Movant explained her husband had been president of the union and he had encountered similar requests for physician documentation after he took sick leave. As an alternative, movant stated personal animosity between herself and Pittman. The court again inquired if there was *any* other reason to explain Pittman's behavior and finally movant stated "she is very prejudiced."

If the court construes movant's response as meaning Pittman is prejudiced against minorities, there is no evidence in the record to suggest such racial animus, except movant's own speculation. In addition, racial bias does not appear to be the gravamen of movant's complaint, but is nothing more than a cursory addition to her main grievance of retaliation for union activities.

The transcript from the EEOC hearing supports the contention that movant's supervisor's actions are motivated more from personal animus and movant's union activities than from racial animus. First, Ms. Lee presented the testimony of two employee witnesses, Lynn Jenkins and Betty Hardy, both of whom testified Lee's union activities appeared to be the driving force between the conflict with Ms. Pittman. Furthermore, Ms. Hardy testified to a "very hostile relationship" between Ms. Pittman and Ms. Lee and when asked "Do you have any thoughts on . . . why it's like that?" she answered, "No, none other than the two of them just can't be together at the same time."

Evidence also was submitted documenting the citation of white males from being AWOL from the Postal Services, as were requests for documentation from other employees. Consequently, movant's contentions that such behavior was based on her race is mere speculation.

■ Under the circumstances, movant has not shown that her problems were based on race or color. Objectively viewed, all that movant has presented is her subjective belief that she has been treated differently due to race or color. Her testimony is devoid of specific objective incidents of racial remarks regarding movant or her work. Indeed, movant's own words were that she thought Pittman's actions were based on personal animosity, before she even mentioned racial bias. Courts cannot allow subjective belief and speculation to be the basis for judicial relief, particularly when, as here, an adequate, non-discriminatory reason is presented for the employer's actions. *See Hornsby v. Conoco,* 777 F.2d 243 (5th Cir.1985).

■ In addition, the transcript reveals movant assisted other employees in

furthering legitimate union grievance claims in her capacity as union steward, and it appears that her relationship with Ms. Pittman declined after this victory. However, Title VII does not protect union activities; such activities are covered by other provisions of federal law. Movant therefore has failed to present a prima facie case for racial discrimination and the merits of her case do not appear to support appointment of counsel.

Lastly, movant's potential damages in this case are extremely limited. She already has entered into a settlement agreement with the Postal Service regarding another incident with Pittman. This settlement agreement included reinstatement, and her full back pay was awarded to her, with the exception of two weeks. This period of time is not at issue in the present case. *See supra* note 3. Consequently, she is limited to seven days wages, the amount she was deprived due to the "AWOL" write-up. At movant's current pay scale, this would be approximately $750. She has failed to allege any other damages, including mental, emotional, or reputational.

### E. *Conclusion of Appointment of Counsel Analysis*

■ Movant has shown that she can afford an attorney, but that she has not made a reasonably diligent attempt to obtain one. The potential merits of this case indicate little likelihood of success, at least under Title VII.

Movant did not plead or provide facts at the hearing which would indicate an arguable chance of success on the *racial* discrimination. Objectively viewed, all that movant has presented is a subjective belief that she has been treated differently due to race or retaliated against due to union activities. Courts cannot allow subjective belief to be the basis for judicial relief, particularly when, as here, an adequate, nondiscriminatory reason is presented for the employer's actions. *See Hornsby v. Conoco*, 777 F.2d 243 (5th Cir. 1985). These facts favor denying movant's motion for appointment of counsel.

### III. *Recommendation*

Movant's motion for appointment of counsel should be denied.

### IV. *Objections*

Within ten (10) days after receipt of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(C).

Failure to file written objections to the proposed findings and recommendations contained within this report within ten days after service shall bar an aggrieved party from *de novo* review by the district court of the proposed findings and recommendations and from appellate review of factual findings accepted or adopted by the district court except on grounds of plain error or manifest injustice. *Thomas v. Arn*, 474 U.S. 140, 148, 106 S.Ct. 466, 471, 88 L.Ed.2d 435 (1985); *Rodriguez v. Bowen*, 857 F.2d 275, 276–277 (5th Cir.1988).