Albert R. GONZALEZ,
Plaintiff–Appellant,

v.

Paul N. CARLIN, Postmaster General,
and United States Postal Service,
Defendants–Appellees.

No. 89–5632
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Aug. 7, 1990.

Albert R. Gonzalez, San Antonio, Tex., pro se.

Winstanley F. Luke, Asst. U.S. Atty., Helen M. Eversberg, U.S. Atty., and Ray Nowak, Asst. U.S. Atty., San Antonio, Tex., for defendants-appellees.

Before REAVLEY, KING and JOHNSON, Circuit Judges.

KING, Circuit Judge:

Plaintiff-appellant Albert R. Gonzalez instituted this action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–16, alleging employment discrimination based on national origin and retaliation for having filed previous employment discrimination complaints. He appeals a take-nothing judgment of the district court in favor of defendant-appellee Postmaster General Paul N. Carlin. We affirm.

## I.

In January 1983, plaintiff-appellant Albert R. Gonzalez (Gonzalez), a United States Postal Service employee, filed an equal employment opportunity (EEO) complaint against the United States Postal Service (the Postal Service), claiming that his supervisor wrongfully placed him on leave restriction. In February 1983, Gonzalez filed another complaint following a discussion with a superior regarding Gonzalez's work habits. Gonzalez filed a third EEO complaint in April 1983, complaining of a letter of warning pertaining to Gonzalez's attendance record. On May 14, 1983, Gonzalez entered a voluntary settlement to resolve these three complaints. In pertinent part the agreement provided that, in exchange for a withdrawal of the pending complaints, "[Gonzalez] would be given consideration for the first vacancy in the Maintenance craft for which [Gonzalez] qualif[ies]."

On June 30, 1983, Gonzalez learned that another individual had been hired as a Level 6 MPE maintenance mechanic. By letter dated September 20, 1983, Gonzalez complained to the Postal Service of its failure to promote him and requested that the agency reinstate his prior complaints based on noncompliance with the May 14, 1983, agreement.[1] In July 1985, the Equal Employment Opportunity Commission (EEOC) determined that the Postal Service failed to issue a final decision on this request. The EEOC remanded the case to the agency for a final decision and advised Gonzalez of his right to file a civil action within 30 days. Gonzalez then timely filed this lawsuit against defendant-appellee Paul N. Carlin, the Postmaster General, alleging violations of section 717 of Title VII of the Civil Rights Act of 1964 as amended (Title VII), 42 U.S.C. § 2000e–16.

The central allegation contained in Gonzalez's original complaint is that the Postal Service failed to promote him to a position in the Maintenance craft as required by the May 1983 settlement agreement. Gonzalez also filed a supplemental complaint alleging ten separate incidents of retaliation by the Postal Service for instituting this lawsuit. At trial Gonzalez testified that all but two of the ten retaliation complaints had been resolved to his satisfaction by an

---

1. At approximately the same time, Gonzalez filed a separate EEO complaint (EEO complaint No. 3–2–3847–3) specifically alleging failure to promote based on national origin discrimination and retaliation. Thus, two failure-to-promote claims were concurrently grinding through the administrative mills. As to No. 3–2–3847–3, the Equal Employment Opportunity Commission (EEOC) ultimately rejected Gonzalez's claims of retaliation and national origin discrimination. When Gonzalez received a right-to-sue letter on this claim, the instant lawsuit, raising the same failure-to-promote issue, was already pending.

agreement dated September 9; 1988.[2] However, Gonzalez also averred at trial that the Postal Service had breached the September 1988 agreement by removing him from his position as a window and distribution clerk in January 1989 and reassigning him to a position as an "unassigned regular."

A bench trial was conducted in July 1989 by a United States magistrate, acting as special master to the district court. In his findings and recommendations, the master concluded that the Postal Service had not violated the May 1983 agreement. As to Gonzalez's claim that the agency had discriminatorily failed to promote him, the master determined that Gonzalez had not even presented a prima facie case because the evidence showed that he had not yet acquired the two-year mechanical, electrical, and electronic experience necessary to qualify for the Level 6 MPE maintenance mechanic position. The master also rejected Gonzalez's claim that his failure to receive the desired promotion was based on retaliatory motives. The master found that, even assuming Gonzalez had established a prima facie retaliation case, the lack of job qualification rebutted any presumption of discrimination and no evidence of pretextual conduct by the Postal Service existed.

The master next reviewed Gonzalez's supplemental claims of retaliation by the Postal Service for his having filed this lawsuit. Noting that the September 9, 1988, agreement, which resolved most of these retaliation claims, specifically states that, to the greatest extent possible, Gonzalez would *not* be utilized in window services, the master concluded that Gonzalez had no legitimate complaint that the Postal Service had violated the agreement by removing him from the window position. In addition, even assuming that good cause was required for the Postal Service to transfer Gonzalez from the window position in light of this agreement, the master found that the record contained ample evidence of poor performance to justify the agency's action.

The two allegations left unresolved by the September 1988 agreement were Gonzalez's claim that a manager made disrespectful statements to Gonzalez about his religious faith, and his complaint regarding a letter of warning and request for reimbursement received by Gonzalez in the wake of accepting a worthless check from a postal customer without requesting proper identification. As to the first claim, the master concluded that Gonzalez completely failed to show how he was harmed by the postal manager's alleged bias against Baptists. Moreover, although religious discrimination is cognizable under Title VII, Gonzalez did not file an EEOC complaint on this basis.

The master found Gonzalez's second complaint equally lacking in merit. Gonzalez admitted that he had violated Postal Service regulations by not requiring two forms of identification before accepting the check in question. Evidence showed that reimbursement by employees in such situations is a standard practice. The letter of warning was sent to Gonzalez for this rule violation, as well as for failure to follow other instructions. The master concluded that Gonzalez was reprimanded for an admitted rule violation and not because he had filed this lawsuit.

The special master submitted his findings to the district court on September 6, 1989. By order filed September 28, 1989, the district court approved and adopted the master's Memorandum and Recommendation, determining that Gonzalez should take nothing by his lawsuit.

Gonzalez now appeals the judgment of the district court. Liberally construing his pro se brief, he appears to be advancing the following arguments: (1) the district court erred in appointing a special master, against Gonzalez's wishes, to conduct the bench trial of this case; (2) the master's

---

**2.** The two remaining claims are that (1) a manager made statements to Gonzalez expressing dislike for Gonzalez's religion and (2) this same manager issued a letter of warning to Gonzalez for accepting a $16.50 check from a customer at the postal window without receiving proper identification.

findings were clearly erroneous; (3) the master abused his discretion by allowing a Postal Service attorney to assist the Assistant United States Attorney during trial; (4) the master's stenographer was cousin to two high ranking Postal Service officials, and thus was in collusion with the defendants; and (5) the district court abused its discretion by failing to appoint counsel to represent Gonzalez. We conclude that Gonzalez's arguments are without merit and affirm the judgment of the district court.

## II.

■ Gonzalez first contends that the appointment of a special master to take evidence and make recommendations in this case was improper without his consent. The record indicates that Gonzalez timely objected to the district court's appointment of a special master.

The district court referred this case to a United States magistrate to act as special master under Federal Rule of Civil Procedure 53 [3] and section 706(f)(5) of Title VII, 42 U.S.C. § 2000e–5(f)(5).[4] Under Rule 53, appointment of a master in a nonjury trial can be made without the consent of the parties only in cases involving difficult accountings or damage computations, or upon a showing that some other "exceptional condition requires it." However, in section 706(f)(5) of Title VII, Congress has modified the restrictions of Rule 53, allowing a district court in its discretion to appoint a master if a Title VII case has not been scheduled for trial "within one hundred and twenty days after issue has been joined." 42 U.S.C. § 2000e–5(f)(5). Although section 706(f)(5) states that reference to a master shall be made "pursuant to Rule 53," it is clear, as the Ninth Circuit has reasoned in interpreting this statutory language, that "[t]here would have been little reason for the statute had Congress merely wished to confine referrals to the extremely limited instances contemplated by Rule 53(b)." *White v. General Services Admin.*, 652 F.2d 913, 915 (9th Cir.1981). We therefore hold that neither consent of the parties nor exceptional conditions are required for a district judge to refer a Title VII case to a magistrate acting as a special master if the case has not been set for trial within 120 days after issue has been joined. *Id.* at 915–16; *Brown v. Wesley's Quaker Maid, Inc.*, 771 F.2d 952, 954–55 (6th Cir. 1985), *cert. denied*, 479 U.S. 830, 107 S.Ct. 116, 93 L.Ed.2d 63 (1986).

In the instant case, Gonzalez's Title VII claims had been pending before the district court for almost four years at the time the district judge appointed a United States magistrate to conduct the bench trial as special master. Under 42 U.S.C. § 2000e–5(f)(5), the court acted within its discretion by appointing a master to expedite a conclusion to this aging action.[5]

■ Gonzalez next contends that the master's findings were clearly erroneous.[6]

---

**3.** Rule 53 *relates to the appointment of masters* and provides in pertinent part:

    **(b) Reference.** A reference to a master shall be the exception and not the rule. In actions to be tried by a jury, a reference shall be made only when the issues are complicated; in actions to be tried without a jury, save in matters of account and of difficult computation of damages, a reference shall be made only upon a showing that some exceptional condition requires it. Upon the consent of the parties, a magistrate may be designated to serve as a special master without regard to the provisions of this subdivision.
Fed.R.Civ.P. 53(b).

**4.** This section provides:

    (5) It shall be the duty of the judge designated pursuant to this subsection [regarding Title VII civil actions] to assign the case for hearing at the earliest practicable date and to cause the case to be in every way expedited. If such judge has not scheduled the case for trial within one hundred and twenty days after issue has been joined, that judge may appoint a master pursuant to rule 53 of the Federal Rules of Civil Procedure.
42 U.S.C. § 2000e–5(f)(5).

**5.** Gonzalez asserts that the master in this case was incompetent to conduct his trial. We reject this unsupported claim, which is belied by both the magistrate's conduct during trial as well as his thorough Memorandum and Recommendation.

**6.** "In an action to be tried without a jury the court shall accept the master's findings of fact unless clearly erroneous." Fed.R.Civ.P. 53(e)(2).

"A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948). After closely reviewing the trial transcript and exhibits, we are convinced that the master fairly considered all the evidence, and that the evidence clearly supports his conclusions, which were adopted by the district court.

■ Gonzalez bore the ultimate burden at trial of proving by a preponderance of the evidence that the Postal Service intentionally discriminated against him. *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981). When a plaintiff alleges discriminatory failure to promote, he must initially come forward with evidence establishing that (1) he belongs to a group protected by Title VII, (2) he was qualified for the job, (3) he was not promoted, and (4) the employer promoted an individual who is not in the plaintiff's protected class. *Bernard v. Gulf Oil Corp.*, 890 F.2d 735 (5th Cir.1989) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973)), *cert. denied*, — U.S. ——, 110 S.Ct. 3237, 111 L.Ed.2d 748 (1990). As explained by the Supreme Court, the plaintiff's prima facie burden "serves an important function in the litigation ... [by] eliminat[ing] the most common nondiscriminatory reasons for the plaintiff's rejection." *Burdine*, 450 U.S. at 253–54, 101 S.Ct. at 1093–94.

■ To establish a prima facie case of retaliation, a plaintiff must show that (1) he engaged in activity protected by Title VII, (2) an adverse employment action occurred, and (3) a causal connection exists between the participation in the protected activity and the adverse employment decision. *Jones v. Flagship Int'l*, 793 F.2d 714, 724 (5th Cir.1986), *cert. denied*, 479 U.S. 1065, 107 S.Ct. 952, 93 L.Ed.2d 1001 (1987).

Gonzalez did not present evidence at trial to establish that he was qualified for the position of Level 6 MPE maintenance mechanic. Evidence presented by the Postal Service showed that, although his application was considered, Gonzalez had not yet acquired two years of general mechanical, electrical and electronic experience necessary to qualify for this job. The master's findings regarding Gonzalez's lack of requisite qualifications are not clearly erroneous and support the district court's holding that Gonzalez did not establish a prima facie case of national origin discrimination.

■ Gonzalez also failed to prove by a preponderance of the evidence that his denial of a promotion was based on retaliatory motives. Assuming *arguendo* that Gonzalez made out a prima facie retaliation case, the fact that he failed to qualify for the position in question rebutted any presumption of retaliation and constituted a reasonable, nondiscriminatory reason for the Postal Service's rejection of his application. Moreover, we cannot find in the record any evidence demonstrating pretext on the part of the Postal Service. *See Burdine*, 450 U.S. at 254–56, 101 S.Ct. at 1094–95. In sum, the record supports the master's findings that Gonzalez's application was rejected due to a lack of experience and not due to national origin discrimination or reprisal.

■ Because cooperation, conciliation, and voluntary compliance are the preferred methods of promoting Title VII goals, *see Flagship Int'l*, 793 F.2d at 726, a voluntary settlement entered into between an employer and an aggrieved employee should not lightly be overturned in a subsequent civil action. The May 14, 1983, agreement between the Postal Service and Gonzalez required only that Gonzalez "be given consideration" for the first Maintenance craft position "for which [he] qualif[ied]." Gonzalez was considered for the Level 6 MPE maintenance mechanic position but did not qualify for it; therefore, the master correctly concluded that the Postal Service had not breached the agreement. A judicial reinstatement of the EEO charges that were resolved by virtue of the May 1983 agreement is consequently not required.

We are also unable to conclude that the master's findings are clearly erroneous regarding the claims of retaliation contained in Gonzalez's supplemental complaint. There is no basis in the record for disturbing the September 9, 1988, settlement agreement that resolved most of these claims. As to the two unresolved claims, Gonzalez failed to come forward with sufficient evidence to support his allegations that he was the victim of any adverse employment action based on religious bias or that his letter of warning for failure to follow proper identification procedures before accepting a personal check and for failure to follow instructions was unwarranted and the result merely of retaliatory motives.

■ Gonzalez's next complaint on appeal is that allowing Kathleen Sheehan, an attorney representing the Postal Service, to attend the trial and assist the Assistant United States Attorney in this case constituted an abuse of discretion. We can understand how Gonzalez's sense of fair play may have been piqued by the fact that he was proceeding at trial pro se, and as a layperson, while two attorneys sat at the opposing table. Nevertheless, Gonzalez did not object to the presence of Ms. Sheehan during trial and, in any event, we find nothing objectionable in allowing Ms. Sheehan, as attorney and representative for the Postal Service, to participate in the proceedings. *See United States v. Cox,* 459 F.2d 986, 988 (5th Cir.1972).

We summarily reject Gonzalez's allegation of collusion between the trial court reporter and the Postal Service. Gonzalez did not advance this argument below, there is no evidence before us to support it, and Gonzalez has not alleged that the trial transcript is inaccurate nor suggested any other harm stemming from the alleged familial relationship between the court reporter and certain high ranking Postal officials.

■ Gonzalez finally contends that the district court erred in denying his request for appointment of counsel. Title VII provides for the appointment of an attorney for a Title VII complainant upon request "in such circumstances as the court may deem just." 42 U.S.C. § 2000e–5(f)(1). There is no automatic right to the appointment of counsel. *Caston v. Sears, Roebuck & Co.,* 556 F.2d 1305, 1309 (5th Cir. 1977). Rather, the decision whether to appoint counsel rests within the sound discretion of the trial court. *Id.* at 1308.

In his motion for appointment of counsel, Gonzalez stated that his take-home pay was $1,650 a month, with monthly expenses of $1,302 a month, and that he had savings of $500. He also stated that he had requested five attorneys to handle his case, but that all five had declined.

The district court analyzed the circumstances surrounding Gonzalez's request under the four-part standard developed in this circuit for ruling on requests for appointment of counsel under the federal *in forma pauperis* statute, 28 U.S.C. § 1915(d).[7] Under this analysis, a court considers four factors in ruling on such requests: (1) the type and complexity of the case; (2) whether the indigent is capable of adequately presenting his case; (3) whether the indigent is in a position to investigate adequately the case; and (4) whether the evidence will consist in large part of conflicting testimony so as to require skill in the presentation of evidence and in cross examination. *Ulmer v. Chancellor,* 691 F.2d 209, 213 (5th Cir.1982). This test is often used in civil rights cases filed under 42 U.S.C. § 1983 and we have held that "[a] trial court is not required to appoint counsel for an indigent plaintiff asserting an action under 42 U.S.C. § 1983 unless the case presents exceptional circumstances." *Branch v. Cole,* 686 F.2d 264, 265 (5th Cir.1982). In denying Gonzalez's request, the district court noted that the factual and legal issues underpinning Gonzalez's central complaint had been previously devel-

7. This subsection states:
(d) The court may request an attorney to represent any such person unable to employ counsel and may dismiss the case if the alle- gation of poverty is untrue, or if satisfied that the action is frivolous or malicious.
28 U.S.C. § 1915(d).

oped by the EEOC.[8] The court ultimately determined that his case presented no "exceptional circumstances" to justify appointment of an attorney to represent him.

■ The district court's analysis of this issue was in error. There is no indication in the record that Gonzalez filed this action *in forma pauperis.* In any event, the "exceptional circumstances" standard for appointing counsel in *in forma pauperis* cases is not interchangeable with the standard for analyzing the need for appointed counsel in Title VII cases. Congress specifically authorized courts to appoint counsel for Title VII complainants in suits brought under Title VII. 42 U.S.C. § 2000e–5(f)(1). Thus, "whatever the fate of such cases with respect to the *in forma pauperis* statute, the District Court should not neglect a highly remedial provision of Title VII itself in considering whether to appoint a lawyer to represent" a Title VII plaintiff. *Camps v. C & P Telephone Co.,* 692 F.2d 120, 126 (D.C.Cir.1981). District courts analyzing the merits of a Title VII plaintiff's request for counsel should consider: (1) the merits of the plaintiff's claims of discrimination; (2) the efforts taken by the plaintiff to obtain counsel; and (3) the plaintiff's financial ability to retain counsel. *Caston,* 556 F.2d at 1309; *see also Neal v. IAM Local Lodge 2386,* 722 F.2d 247, 250 (5th Cir.1984). No single factor is conclusive.

■ Despite our determination that the district court analyzed Gonzalez's request for counsel under the wrong legal standard, upon review of the record we are not persuaded that justice or judicial economy would be served by remanding this case to the district court for a reevaluation of this issue. We do not think that the result of Gonzalez's motion would have been any different had the court articulated the proper approach. The court did, in fact, address two of the three *Caston* factors by, first, referring to the EEOC proceeding that resulted in a rejection of Gonzalez's claims of discrimination and retaliation. We stated in *Caston* that a determination of the EEOC is "highly probative" in determining whether to appoint counsel. *Caston,* 556 F.2d at 1309. The district court also found that Gonzalez was "under no constraint which would inhibit his opportunity to investigate the cause." Gonzalez stated in his motion for appointment of counsel that he was still employed with the Postal Service and that his take-home salary was $1,650 a month. Although his savings were modest, with a steady stream of income Gonzalez was in no worse financial straits than many litigants who seek an attorney to take their case, perhaps under a contingency or other modified payment basis.

Gonzalez also stated in his motion that he had unsuccessfully contacted five attorneys; thus, the second *Caston* factor may arguably have been satisfied in the sense that an appointment of counsel would not have been rewarding Gonzalez for his own lack of diligence. The district court did not discuss this factor, but did address the other two *Caston* factors—albeit not under a *Caston* analysis per se—and found them to be wanting. On balance, the *Caston* factors weighed against the appointment of counsel for Gonzalez. While the district court articulated the incorrect legal standard in its order denying appointment of counsel, it did exercise a reasoned and well-informed discretion that we are unwilling, under this record, to overturn at this stage.

The master who tried this case made all possible concessions to the fact that Gonzalez was proceeding pro se. The master questioned Gonzalez under oath to fully develop the evidence surrounding his complaints and instructed him as to the documentary evidence he should submit to the court. Most importantly, however, the determinative fact of this case, that Gonzalez simply did not possess the requisite experience to qualify for the position he now

8. As discussed above, Gonzalez filed two EEO complaints relating to the Postal Service's decision not to select him as a Level 6 MPE maintenance mechanic. In a Statement of Findings and Recommended Decision dated July 31, 1984, the EEOC determined that Gonzalez failed to establish employment discrimination based either on national origin discrimination or on reprisal.

claims was discriminatorily denied him, was completely developed at trial and would remain unchanged regardless of whether Gonzalez had been represented by counsel.[9]

### III.

Based on the foregoing reasons, we AFFIRM the judgment of the district court.

AFFIRMED.

**9.** Likewise, the district court's determination of Gonzalez's supplemental claims of retaliation was based on (1) Gonzalez's own testimony that all but two of these claims had been resolved by agreement to his satisfaction, and (2) the September 1988 agreement itself, which states that Gonzalez would *not* be used as a window clerk to the greatest extent possible, and which thus negates Gonzalez's complaint that the Postal Service had breached the agreement by removing him from the window position. As to the two unresolved retaliation allegations, we cannot believe that an attorney's assistance could have altered the district court's rejection of these claims. Gonzalez simply failed to state a claim regarding the alleged derogatory remark made to him about his Baptist faith because he could not articulate any adverse consequences resulting from this insult. Gonzalez's other allegation was that a letter of warning was issued for purposes of reprisal. Although an attorney may have been helpful during examination of Postal Service witnesses to develop the existence of possible pretext, the Postal Service's evidence regarding nondiscriminatory reasons for issuing this letter, i.e., Gonzalez's poor performance, was so strong that a remand on this basis cannot be justified.