**Arthur P. READO**

v.

**TEXAS GENERAL LAND OFFICE.**

No. 1:95–MC–71.

United States District Court,
E.D. Texas,
Beaumont Division.

May 28, 1996.

Arthur P. Reado, pro se.

## MEMORANDUM ORDER ADOPTING THE REPORT AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE AND OVERRULING PLAINTIFF'S OBJECTIONS

COBB, District Judge.

### I. Nature of the Case

Plaintiff, a former employee at a local division of the Texas General Land Office, seeks to bring suit pursuant to 42 U.S.C. § 2000e–2(a) and 29 U.S.C. § 623(a)(1), claiming that his termination from that state agency was prompted by race and age discrimination.

Plaintiff on December 13, 1995 moved to proceed *in forma pauperis* and for appointment of counsel in connection with these employment discrimination claims. These motions were referred to United States Magistrate Judge Earl S. Hines for hearing and issuance of a report and recommendation pursuant to general order and 28 U.S.C. § 636(b)(1). The magistrate judge convened a hearing on March 19, 1996 to receive evidence in connection with these motions.

### II. Magistrate Judge's Report

On April 24, 1996 the magistrate judge entered a report recommending that the motion to proceed *in forma pauperis* be granted and the motion for appointment of counsel be denied. In analyzing plaintiff's second motion, the magistrate judge's report examined four factors: plaintiff's ability to present his case, plaintiff's efforts to secure counsel, plaintiff's financial ability to retain counsel, and the merits of plaintiff's case. Evidence pertinent to each of these factors was received by the magistrate judge.

Plaintiff timely filed written objections to the magistrate judge's recommended disposition of the motion for appointment of counsel. Plaintiff's objections consist, in essence, of a general disagreement with the recommendation that the motion for appointment of counsel be denied. Typically, when a party files an objection the a magistrate judge's recommendation, the district judge to whom the case is assigned is obligated to conduct a *de novo* review of the recommendation. 28 U.S.C. § 636(b)(1)(C); FED.R.CIV.P. 72(b). However, given the general and conclusory nature of the objections filed in this matter, it is arguable whether the need for *de novo* review has been triggered. *Nettles v. Wainwright,* 677 F.2d 404, 410 n. 8 (5th Cir.1982), *overruled in part by Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415 (5th Cir. 1996) (en banc). Nevertheless, in an abundance of caution the court has considered *de*

1047

*novo* plaintiff's motion for appointment of counsel.

### III. Plaintiff's Objections

Plaintiff's argues that defendant will undoubtedly be represented by licensed legal counsel and that his own case would be better presented by an attorney. Plaintiff states that his financial resources are extremely limited, but notes that he would be willing to enter into a one-third contingency agreement with appointed counsel. Plaintiff states that his search for a lawyer has been hampered by a dearth of attorneys handling employment law claims in the local area.

### IV. Discussion

■ There is no automatic right to appointed counsel in a Title VII case. Rather, appointment of counsel is discretionary with the trial court. *Johnson v. United States Dep't of the Treasury*, 939 F.2d 820, 824 (9th Cir.1991); *Gonzalez v. Carlin*, 907 F.2d 573, 579 (5th Cir.1990); *Poindexter v. FBI*, 737 F.2d 1173, 1183 (D.C.Cir.1984); *Caston v. Sears, Roebuck & Co.*, 556 F.2d 1305, 1309 (5th Cir.1977).

Plaintiff reasons that his case might proceed more smoothly with assistance of licensed legal counsel. Yet he does not otherwise assert that the magistrate judge's analyses of the factors governing motions for appointment of counsel were in error. For example, he does not challenge the summary of his academic and professional qualifications contained in the April 24, 1996 report. The magistrate judge found plaintiff's academic and vocational background to counsel against the appointment of an attorney. Moreover, while plaintiff asserts that he has "made mistakes in presenting this cause in the court," plaintiff does not specify what mistakes he is referring to. Whatever they may be, it does not appear on this record that plaintiff's *pro se* representation has in any way compromised his claims or prejudiced his case. Plaintiff also fails to contest the magistrate judge's analysis of the apparent merits of his claims.

■] The court is mindful of the fact that in determining a motion for appointment of counsel, it must consider the unfairness of imposing involuntary servitude upon a member of the bar when the likelihood of success appears slight. *Tatum v. Community Bank*, 866 F.Supp. 988 (E.D.Tex.1994). Upon *de novo* weighing of the relevant factors, the court is of the opinion that the magistrate judge's recommended disposition was correct.

Despite plaintiff's inability to locate a suitable employment lawyer to date plaintiff may redouble his efforts to secure such counsel on a contingency fee basis, given his statement that such an arrangement would be acceptable to him.

### V. Conclusion

Accordingly, plaintiff's objections are **OVERRULED**. The findings of fact and conclusions of law of the magistrate judge are correct and the report of the magistrate judge is **ADOPTED**.

It is therefore **ORDERED** that plaintiff's motion to proceed *in forma pauperis* is **GRANTED**. It is further

**ORDERED** and **ADJUDGED** that plaintiff is **GRANTED** a reasonable period of time, up to and including July 1, 1996, within which to file his Title VII complaint on a *pro se* basis or through privately retained counsel, if he wishes to proceed. It is further

**ORDERED** that plaintiff's motion for appointment of counsel is **DENIED**.

### REPORT AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE RE: MOVANTS MOTIONS TO PROCEED IN FORMA PAUPERIS AND FOR APPOINTMENT OF COUNSEL

HINES, United States Magistrate Judge.

Pending are movant's December 13, 1995 motions to proceed *in forma pauperis* and for appointment of counsel. These motions were referred to the undersigned United States Magistrate Judge for hearing and issuance of a report recommending disposition. After a continuance and subsequent failure to appear, a hearing was convened on March 19, 1996, at which time movant appeared to present his motion and respond to questions. Prior to the hearing, the court ordered movant to produce for the court's inspection a

copy of his Equal Employment Opportunity Commission ("EEOC") investigative file.

## I. Background

Movant worked from late 1992 through spring 1993 as a probationary oil spill response officer with the Texas General Land Office ("TGLO"), a state agency that manages public lands, collects royalties on mineral leases, and oversees cleanups of oil spills. Movant brings suit under Title VII for race discrimination [1] and under the Age Discrimination in Employment Act.[2] Defendant is black; he was 47 at the time of his hiring. He was terminated approximately fifteen days prior to the conclusion of his six-month probationary period.

### A. Evidence Pertinent to the Age Discrimination Claim

Prior to his hiring, movant was interviewed separately by J. Ewing and Manny Gonzales. Movant alleges that each of these individuals asked him whether he would find it difficult to work alongside younger individuals, as movant would be approximately fifteen years older than the next oldest oil spill response officer.

As part of his training, movant was required to attend various safety, maritime, and oil spill response courses. One of these courses was a several month class sponsored by the United States Coast Guard held during the evening in Beaumont, Texas. While movant was enrolled in the Beaumont Coast Guard course, he was simultaneously required to attend day courses in Houston (tankerman's training) and, later, Galveston (oil spill response course). This simultaneous training required frequent back and forth travel. TGLO's motive in requiring movant to enroll in concurrent courses, movant argues, was to test his endurance. Movant asserts he is aware of no other probationary employee who was required to take both night and day classes. He further notes that Lisa Anderson, a much younger probationary employee hired shortly after his engagement, was not put on the fast-track training program.

Movant further supports his age discrimination claim with testimony of wisecracks made to him by his co-workers on the subject of his age. One such remark by an unspecified employee was, "C'mon, old man, can't you make it up the stairs?" J. Ewing, the Office Manager, is alleged to have said, "You know you're getting old," although no context is given for this statement. Chris Hyatt, the Assistant Officer Manager, remarked about movant's penchant for falling asleep during class: "Well, old man, you need to get more rest. Old people need more sleep."

There was also testimony at the March 19, 1996 hearing that Ewing once left a newspaper article on movant's desk dealing with the general subject of smoking and aging. Movant was one of two smokers in the office.

### B. Evidence Pertinent to the Race Discrimination Claim

Movant does not always succeed in articulating a nexus between the events as alleged and the issue of racially discriminatory intent. All of movant's evidence is presented in the following paragraphs:

Movant first argues that the low number of blacks in the office was indicative of underlying racially discriminatory sentiments prevailing in the office.

Movant alleges that all "high profile" assignments dealing with the public were given to the white oil spill response officers while he and Bryant were relegated to such functions as supply officer, beach clean-up officer, and making irregular contacts for bids on warehouse space.

Movant claims he was reprimanded for returning agency vehicles with unusual amounts of dirt, mud, and trash in them. He alleges that various white officers routinely returned vehicles without first cleaning them, but that they were never reprimanded.

---

1. "It shall be an unlawful employment practice for an employer—(1) ... to discharge any individual ... because of such individual's race...." 42 U.S.C. § 2000e–2(a).

2. "It shall be unlawful for an employer ... to discharge any individual ... because of such individual's age." 29 U.S.C. § 623(a)(1).

Logging of mileage on TGLO vehicles also became an issue. Movant claims that he was questioned about the miles logged on agency vehicles and was asked to draft a mile-by-mile calculation of total mileage. Movant claims that no other employee that he knows of was ever asked to account for mileage in such a manner, and he attributes this differential treatment to his race.

Movant next contends that several racially derogatory remarks were made to him during his employment at TGLO. For example, movant claims that Lisa Anderson, upon first meeting movant and being told that they would share an office, stated, "I don't care to be in a colored office." Chris Hyatt is alleged to have referred to conditions at a public housing project in Beaumont as "typical of a black area." Movant claims additional similar remarks were made, but that he cannot remember them specifically. He also points to his cool reception at various office parties, at least one of which was in a white supervisor's house, as indicative of race discrimination.

Movant next notes that he was forced to share a vehicle with Lisa Anderson during training in Galveston. He claims that other employees were generally allowed their own vehicles and attributes the differential treatment to his race. Movant is also of the opinion that Anderson was placed in his vehicle to keep an eye on his comings-and-goings.

In a final effort to bolster his charge of race discrimination, movant notes that when he was terminated, Manny Gonzales asked him to keep his hands on the table in plain view. Drawing on social stereotypes, movant claims that such a request was made simply because of his race.

## C. Defendant's EEOC Version

The EEOC file reflects that the primary issues raised in administrative proceedings were statements allegedly made by Ewing and Gonzales during movant's interviews, the mileage issue, the division of job responsibilities, and the statement allegedly made during movant's termination. The other issues

now raised, particularly the various statements made concerning movant's age and race, are new accusations.[3]

## D. Countervailing Factors

The purpose of this section is to consider alternate bases for the allegedly discriminatory behavior for which movant seeks to be compensated. A certain degree of probing at the hearing elicited the following admissions and explanations from movant as to possible alternate explanations for the events charged other than age or race discrimination.

### 1. Age

As to the simultaneous coursework movant was required to attend, movant was told by his superiors he was being required to take both day and night classes because he was behind in his training due to his hiring date. A simultaneous schedule was the only way to complete the coursework in a timely fashion.

As to the various age related comments—which are, as noted—new allegations, movant does not provide the context in which these statements were made. At least one was made by an employee who was far down the hierarchical line of authority and who apparently wielded little power over employment decisions.

Further factual inquiry is necessary before drawing any conclusions with respect to the newspaper article. The exact subject and tenor of the article are unknown, as is the context in which it was recommended to movant.

### 2. Race

There are problems with much of movant's evidence of race discrimination as well. According to movant's testimony at the March 19 hearing, of the total of six oil spill response officers in the office, two (movant and one Bryant)—or a third of them—were black. While no statistically meaningful conclusion can be drawn from so small a sample, there certainly can be no preliminary infer-

---

**3.** It is curious that movant chose to not present some of the potentially most damning evidence before the EEOC.

ence from these figures that race discrimination was pervasive in hiring practices at the local level. Moreover, movant fails to support his charge of discrimination in hiring with statewide figures for the state agency.

As to the mileage issue, the EEOC record reflects that movant's superiors allege they became concerned when movant logged 809 miles on a five-day trip to Channelview, near Houston. According to the handwritten notes kept by Mr. Ewing and contained in the EEOC record, the only reason that movant was questioned about his mileage to Channelview was that flags had also gone up on two other occasions—when movant logged 540 miles for a trip for which a second employee logged 450 miles, and when movant claimed it took him 8 hours to drive to College Station.[4] Moreover, movant's superiors had learned from Lisa Anderson that on their return trip from Galveston movant took a circuitous route home and advised her that she needed to learn how to take her time as a state worker so as to accrue the maximum possible "comp time." [5]

With respect to the allegation that movant was forced to share a vehicle because of his race, there is, again, no serious attempt to draw a nexus between that requirement and movant's race. There is, for example, no indication that Bryant, the other black employee, was similarly denied a separate vehicle. Nor was there any evidence to rebut the conclusion that movant was asked to share a vehicle for economic reasons because he and another employee, Lisa Anderson, were participating in the same training course at the same location. The shared status of movant and Anderson as junior employees might also be a reasonable explanation.

Finally, any racial implication · movant could possibly conceive for the requirement that he keep his hands in plain view during termination is undercut by movant's own testimony that he was observed by his co-workers on several occasions carrying and/or sharpening his knife at the office.

## II. Motion to Proceed *In Forma Pauperis*

◼ In *Adkins v. E.I. DuPont de Nemours, Inc.*, 335 U.S. 331, 69 S.Ct. 85, 93 L.Ed. 43 (1948), it was held that one need not be absolutely destitute to enjoy the benefit of proceeding *in forma pauperis.* An affidavit to proceed *in forma pauperis* is sufficient if it states that one cannot because of his poverty afford to pay for the costs of litigation and still provide for himself. *Id.* at 339, 69 S.Ct. at 89.

◼ Movant is not currently employed and receives no income from any form of self-employment. He resides with his parents and has no source of income apart from $119 per month in food stamps. He does not qualify for unemployment compensation. The only other income received in the last year was $7650 earned from May to October 1995 as a cook for Hornbeck Offshore. Based on this financial profile, it is highly unlikely movant is in a position to both pay the court's filing fees and provide for his most basic living expenses, and the undersigned therefore concludes that movant meets the indigency requirements of 28 U.S.C. § 1915(d) and qualifies to proceed *in forma pauperis.*

## III. Motion for Appointment of counsel

◼ "Upon application by the complainant and in such circumstances as the court may deem just, the court may appoint an attorney for such complainant. . . ." 42 U.S.C. § 2000e–5(f)(1). Although this section grants the right to request an attorney, it does not confer a right to actually have one appointed. The decision whether to appoint an attorney is one within the broad discretion

---

**4.** The 809–mile trip was, according to submissions by both movant and the agency contained in the EEOC record, a five-day trip to Channelview. However, at the hearing, movant shifted gears and claimed that the 809 miles were for a trip to College Station.

**5.** Movant denies ever having made such a remark, and alleges that Anderson made this up as a result of her distaste for him and other members of his race. Movant conveniently omits an equally likely motivation for fabrication, if the statement were indeed untrue: namely, that the two had had a profanity-filled argument that morning over transportation to the course during which movant threatened to hit her.

of the trial judge given the particular facts of the case. *Gonzalez v. Carlin*, 907 F.2d 573, 579 (5th Cir.1990); *Young v. K–Mart Corp.*, 911 F.Supp. 210, 211 (E.D.Va.1996). The following three factors are generally balanced by courts in determining whether to appoint an attorney: the merits of the claim, the plaintiff's own efforts to secure counsel, and the plaintiff's financial ability to retain private counsel. *Gonzalez*, 907 F.2d at 580; *Marshall v. University of Chicago Hosp.*, No. 90C2896, 1990 WL 77541, at *1 (N.D.Ill. May 29, 1990). Several courts also consider a plaintiff's ability under the circumstances of the case to present the case without the assistance of an attorney, *Poindexter v. FBI*, 737 F.2d 1173, 1189 (D.C.Cir.1984); *Young*, 911 F.Supp. at 211, and the Fifth Circuit has implicitly recognized the correctness of such a further inquiry, *Salmon v. Corpus Christi Indep. Sch. Dist.*, 911 F.2d 1165, 1166–67 (5th Cir.1990).

## A. Plaintiff's Ability to Present His Case

 This factor can be take on great importance in the analysis of the motion for appointment of counsel, for, as one court stated, "[W]hen it is clear that a Title VII plaintiff has been diligent in attempting to retain a lawyer and has proven both that he is indigent and that some factual disputes between the parties exist, the court retains discretion to deny a motion for appointment of counsel." *Gray v. Northern Ind. Pub. Serv. Co.*, 685 F.Supp. 695, 697 (N.D.Ind. 1988).

Movant has done a respectable job of presenting his case *pro se* to this stage, both in his written submissions to the EEOC and in person before the undersigned. His submissions to the court have been detailed and ably written. His presentation at the hearing was well organized and his arguments were well articulated. None of this is surprising, given movant's extensive and varied educational background. Movant is a high school graduate and has earned 90 hours of college credit, principally in the fields of engineering and communications. Movant also completed six months of business administration courses while in the Air Force. In addition, he has completed various bookkeep-

ing and computer technology courses. Finally, movant has over three years of training in environmental and industrial fields. In short, movant has demonstrated an ability to succeed in academically challenging fields.

Moreover, it does not appear likely at this juncture that presentation of movant's case will require knowledge of complex legal issues. Other than the testimony of fact witnesses, the only tangible evidence movant claims he will require are the mileage logs held by defendant.

Based on the limited scope of the legal issues presented in this proceeding, movant's academic profile, and the commendable job movant has done to this point of presenting his case *pro se*, the court must conclude that this factor weighs against granting movant's motion for appointment of counsel.

## B. Efforts to Secure Counsel

 Movant contacted three local law firms in an attempt to obtain counsel in this matter, and all three refused to take the case. Two firms informed him that the subject matter of the case was outside their general practice areas; the other firm notified movant that a potential conflict of interest precluded their representation of him. It is likely, given movant's financial situation, these communications with local firms were in the nature of pro bono solicitations. Prior efforts to obtain pro bono representation weigh in favor of granting movant's motion. *Adams v. Lever Bros. Co.*, 734 F.Supp. 815, 817 (N.D.Ill.1990). However, movant discontinued his search for representation after just three refusals.

Nor did movant ever discuss the possibility of a contingent fee arrangement with any attorney. If a plaintiff has made attempts to seek out a contingent fee arrangement, then there is a stronger argument for finding this factor to favor the appointment of counsel. *Gonzalez*, 907 F.2d at 580; *Caston v. Sears, Roebuck & Co.*, 556 F.2d 1305, 1309 (5th Cir.1977); *Marshall*, 1990 WL 77541, at *1. In any event, movant's efforts were significant enough to have this factor weigh—albeit slightly—in favor of appointing counsel.

## C. Financial Ability to Retain Private Counsel

] In analyzing this factor, a showing of poverty as substantial as is necessary to support a motion to proceed *in forma pauperis* is not necessary. *Ivey v. Board of Regents*, 673 F.2d 266 (9th Cir.1982). There need only be insufficient assets and income to enable movant to afford an attorney to investigate and file his claim. Since movant has met the heavier burden to proceed *in forma pauperis*, it follows that he has met the requirement of indigence to trigger a favorable finding on this factor.

## D. Merits of the Case

] Examination of the merits of the case *sua sponte* before the defendant has been required to answer is akin to frivolousness review of a general *in forma pauperis* proceeding in that it cannot serve as a fact finding process for the resolution of disputed facts. *Denton v. Hernandez*, 504 U.S. 25, 31–32, 112 S.Ct. 1728, 1733, 118 L.Ed.2d 340 (1992).

Examination of the merits is, nevertheless, a more searching inquiry than that engaged in during analysis of a motion for summary judgment. In response to a motion for appointment of counsel in a race and age discrimination case, one court stated:

> Appointment of counsel is warranted only if a plaintiff's position seems likely to be of substance. This threshold requirement is not satisfied by mere bald assertions which technically put a fact in issue and suffice to avert summary judgment. An appointment of counsel inquiry thus is different from a summary judgment inquiry, and it is even more unlike the inquiry on a motion to dismiss. The weight of the evidence is not at issue on a motion to dismiss, but is part of the threshold consideration for appointment of counsel. A plaintiff who has stated a claim but offered scant evidence in support of that claim can expect to survive a motion to dismiss and yet fail to obtain appointment of counsel.

*Smith v. City Univ. of N.Y.*, No. 91 Civ. 2301, 1993 WL 106395, at *3 (S.D.N.Y. Apr. 7, 1993) (internal quotations and citations omitted).

This language is apt in movant's case. Movant's evidence may be enough to warrant a trial, but it is as likely as not that defendant will succeed in the collective judgment of the triers of fact in refuting it piece by piece. Some of the statements alleged to have been made are, by virtue of their absence from EEOC proceedings and their very content, incredible. Other statements are simply stray comments made by workers far down the hierarchical line without any connection to the employment process. Some of the acts alleged to have resulted from a discriminatory mindset may likely be found by the trier of fact to have stemmed from innocent motivations. Another subset of the collection of acts on which movant bases his claims appears to have little connection with race or age. Finally, the balance are likely to be at least disputed.

While movant has presented evidence which might suffice to raise sufficient fact issues to avoid summary dismissal of the claims *sua sponte* at this early stage, the more probing inquiry into the quality or weight of that evidence reveals that movant's main basis for his discrimination claims is his subjective belief he was discriminated against. Subjective belief evidence is typically considered to carry little weight in the discrimination inquiry. *Hornsby v. Conoco*, 777 F.2d 243, 246 (5th Cir.1985); *Elliott v. Group Med. & Surgical Serv.*, 714 F.2d 556, 567 (5th Cir.1983); *Pilditch v. Board of Educ.*, 3 F.3d 1113, 1119 (7th Cir.1993). In sum, while this case is not frivolous within the meaning of 28 U.S.C. § 1915(d) and may present triable issues of fact sufficient to preclude summary disposition, this does not now appear a particularly strong Title VII or ADEA case, and the "merits of the case" factor does not weigh in favor of appointed counsel.

## IV. Recommendation

Movant's motion to proceed *in forma pauperis* should be granted. Movant's motion for appointment of counsel should be denied.

### V. Objections

Within ten (10) days after receipt of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(C).

Failure to file written objections to the proposed findings and recommendations contained in this report within ten days after service shall bar an aggrieved party from *de novo* review by the district judge of the proposed findings and recommendations and from appellate review of factual findings accepted or adopted by the district court except on grounds of plain error or manifest injustice. *Thomas v. Arn,* 474 U.S. 140, 148, 106 S.Ct. 466, 471, 88 L.Ed.2d 435 (1988); *Rodriguez v. Bowen,* 857 F.2d 275, 276–77 (5th Cir.1988).

Dated April 24, 1996.