# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

March 16, 2011

No. 10-20312
Summary Calendar

Lyle W. Cayce
Clerk

WILLIAM R. NOACK,

Plaintiff-Appellant,

v.

YMCA, OF THE GREATER HOUSTON AREA,

Defendant-Appellee.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:08-CV-3247

Before KING, BENAVIDES, and ELROD, Circuit Judges.

PER CURIAM:[*]

This appeal arises from the district court's grant of summary judgment in favor of the YMCA of Greater Houston on all of William Noack's claims for employment discrimination and failure to pay overtime, brought under Title VII of the Civil Rights Act of 1964, the Fair Labor Standards Act (FLSA), and state law. We AFFIRM.

---

[*]Pursuant to 5th Cir. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Cir. R. 47.5.4.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Noack claims that the YMCA began discriminating against him shortly after he was hired as a part-time childcare employee in March 1999. Many of those alleged acts of discrimination occurred before 2007, which is a significant date for reasons set forth in greater detail below. First, he claims that in the summer of 2000, he was mockingly presented with a gag "Bee Charmer" award for having reported a beehive at the base of a tree located approximately twelve feet from a main hiking trial used by children at a YMCA day camp. Second, he says that in 2000, he was improperly disciplined for taking a young girl to the bathroom in contravention of the YMCA's policies. In lieu of termination for his misconduct, Noack was transferred to a new facility. Third, also in 2000, he says he was refused promotion to a "site director" position at a specific location he desired because he was a male, although he was in fact promoted to site director at a different YMCA facility (and later to multi-site director). Fourth, in 2005 he was given a gag "Mr. Handy Man" award, allegedly evidencing that he was relegated to menial labor. Fifth, he was reprimanded for sending personal e-mails on work time, although others engaging in the same conduct were not.

In December 2000, Noack submitted a complaint to the Equal Opportunity Employment Commission (EEOC) and to the Texas Commission on Human Rights alleging that his transfer to a new facility after the restroom incident and the YMCA's refusal to transfer him as a site director to his chosen site were evidence of sex discrimination. Noack later withdrew that complaint before any action was taken by either the EEOC or the Texas authorities.

Noack also alleges that the YMCA's discriminatory actions continued throughout 2007 and afterward. In August of that year, Noack complained to his supervisor, Debbie Egger, about his work load and inability to work paid overtime. She reminded him about the YMCA's budget constraints and its policy

against employees working overtime. Despite that conversation, Noack worked two hours of unauthorized overtime the next week. When Egger was made aware of the situation, she sent him home because he had completed the maximum number of workable hours that week. The next week, Egger gave Noack a written reprimand regarding the incident. Noack asserts that this reprimand was retaliation for having requested payment for the number of overtime hours he had worked.

Shortly after receiving the written reprimand, Noack wrote Egger an e-mail alleging that the YMCA engaged in discriminatory hiring practices. In that e-mail, Noack alleged that she had instructed him not to hire too many African-American people and to keep African-American employees separated from each other. Noack now contends that Egger made a similar statement regarding hiring men. Egger replied by expressing her support for hiring a diverse staff that would reflect the diverse community that the YMCA served.

Approximately a month after receiving the written reprimand, Noack met with human resources (HR) personnel to express several more complaints. In this meeting, Noack complained about both the overtime policy and the YMCA's alleged discriminatory hiring practices. He also complained about being transferred to a different facility in 2000 after the incident in which he took the young girl to the restroom. None of these issues were resolved in the meeting. Approximately two weeks after his meeting with HR, Noack tendered his resignation. His resignation e-mail stated that he was leaving voluntarily "to go on and do other things." That same day, an HR employee met with Noack and asked him to provide an estimate of the amount of unpaid overtime he had worked in the last three years. Noack estimated the unauthorized overtime at 138 hours. The YMCA paid him for the requested amount despite the fact that Noack did not have any documentation to indicate the number of hours that he worked or the tasks that he completed. Noack also makes various other claims of discriminatory activity for which he does not specify a date. For example, he

claims that he was once asked to change a flat tire and that on at least one occasion, an e-mail that was offensive to men was circulated around the office.

Subsequently, Noack filed this lawsuit, contending that the YMCA violated Title VII by discriminating against him based on his sex. He also claims under the same statute that the YMCA systematically discriminated on gender and racial grounds, affecting his employment by hindering him from hiring male or black employees. That discrimination, Noack claims, led to a hostile work environment and to his constructive discharge. In addition, he alleges that the YMCA illegally retaliated against him pursuant to the FLSA after his request for overtime pay. Finally, he alleges that the YMCA intentionally inflicted emotional distress.

The YMCA filed for summary judgment on all counts. In a detailed report, the magistrate judge recommended granting the YMCA's summary judgment motion. After reviewing Noack's objections to the recommendation, the district court adopted the magistrate judge's memorandum and recommendation and entered final judgment in favor of the YMCA. Noack appeals, arguing that the district court improperly granted the YMCA's motion for summary judgment because the district court improperly excluded admissible evidence and wrongly considered inadmissible evidence. In the alternative, Noack argues that the motion for summary judgment was improperly granted because genuine issues of material fact were in dispute. He further contends that the magistrate judge should have recused herself *sua sponte* and that she erred by denying him the appointment of counsel.

## II. DISCUSSION

### A.   Summary Judgment Dismissal of Claims

Our review of the district court's grant of summary judgment is *de novo*. *Keelan v. Majesco Software, Inc.*, 407 F.3d 332, 338 (5th Cir. 2005). In reviewing a grant of summary judgment, we view the evidence and inferences from the summary judgment record in the light most favorable to the nonmoving party.

4

*Minter v. Great Am. Ins. Co. of N.Y.*, 423 F.3d 460, 465 (5th Cir. 2005).
"Summary judgment is proper when the "movant shows that there is no genuine
dispute as to any material fact and the movant is entitled to judgment as a
matter of law." Fed. R. Civ. P. 56(a).  We review a district court's evidentiary
decisions under an abuse of discretion standard.  *Celestine v. Petroleos de
Venezuella SA*, 266 F.3d 343, 349 (5th Cir. 2001).

**B.     Noack's Title VII Claims**

   *1. The Limitations Issue*

   The district court granted summary judgment to defendants on Noack's
Title VII claims with respect to all allegedly discriminatory incidents which
occurred prior to February 2007.  We agree.  Title VII requires the plaintiff to
file his petition alleging discrimination within 180 days of the alleged unlawful
employment practice, unless the complainant has begun proceedings with a state
or local agency, in which case the limitations period is extended to 300 days.  42
U.S.C. § 2000e-5(e)(1).  Complying with the filing deadline is a prerequisite to
bringing a Title VII claim.  See *Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321,
328 (5th Cir. 2009) (requiring courts to dismiss claims that do not comply with
the filing deadline, regardless of the substantive merits of the claims).  Here,
because Noack submitted his charge of discrimination to the Texas Commission
on Human Rights on December 13, 2007, the relevant limitations date is 300
days prior to that, in February 2007.  All five of Noack's allegations of
discrimination that occurred before that date, as set forth above and described
in detail in the magistrate judge's report and recommendation, are barred by
statute.

   Noack, however, contends that all of those factual allegations should have
been considered because they constituted a "continuing violation."  See *Pegram
v. Honeywell, Inc.*, 361 F.3d 272, 279 (5th Cir. 2004).  The continuing-violation
exception is an equitable doctrine that extends the limitations period on

otherwise time-barred claims when the unlawful employment practice in question "manifests itself over time, rather than as a series of discrete acts." *Id.*

The district court determined that the continuing-violation exception was not applicable to the present case. We agree. Noack presented no evidence that the complained of acts of discrimination were sufficiently related to constitute an unlawful employment practice. The alleged acts did not involve the same type of harassment and were not perpetrated by the same individuals. *See Stewart*, 586 F.3d at 329. Therefore, all of Noack's claims that occurred before February 2007 were properly time barred by the district court.

*2. The Merits of Noack's Title VII Discrimination Claims*

Noack also appeals from the district court's dismissal of his Title VII claims on the merits. He asserts that the YMCA's alleged prohibition against hiring too many African-Americans and men had a disparate impact on his ability to perform his employment duties. Moreover, Noack claims that the YMCA discriminated against him because of his sex, based on four incidents. Specifically, Noack claims he was discriminated against when YMCA employees, (a) asked him to clean up the break room; (b) asked him if he could help a co-worker change a flat tire; (c) sent e-mails he considered offensive and degrading to men; and (d) paid him at a rate different from that of his female co-workers. Under both theories, Noack claims that the YMCA's discrimination created a hostile work environment and rendered him subject to constructive discharge.

Whether a work environment is hostile is determined by an objectively reasonable standard assessed by the totality of the circumstances. *Alaniz v. Zamora-Quezada*, 591 F.3d 761, 771 (5th Cir. 2009). Relevant factors include "frequency of the conduct, its severity, the degree to which the conduct is physically threatening or humiliating, and the degree to which the conduct unreasonably interferes with an employee's work performance." *Id.* Not all forms of harassment are actionable, including "simple teasing, offhand comments, and isolated incidents . . . ." *Id.*

Noack's brief only restates the same evidence already considered and properly rejected by the district court.  For example, Noack argues that various e-mails and documents constitute "*de facto* admissions of guilt" that show the YMCA's policy of discrimination.  Some of those documents were created by Noack himself, such as his e-mails alleging discrimination. As such, they cannot constitute *de facto* admissions of guilt by the YMCA. *See Jackson v. Cal-Western Packaging Corp.*, 602 F.3d 374, 379-80 (5th Cir. 2010) (stating that a mere allegation by the plaintiff does not constitute evidence regarding the veracity of that allegation).  Other documents, such as Egger's response to his allegations affirming that the YMCA sought to have a diverse workforce, cannot support a finding of discrimination.  Such statements do not show discriminatory intent. Nor does his claim that he was paid less money than certain of his female coworkers support a Title VII action.   At the threshold, Noack fails to point to anything in the record to establish a causal connection between the differing pay rates and his sex.  Rather, as evidence of the causal link, he offers only the conclusory allegation that: "after all, why would two new, part-time female staff be making more than Noack (fulltime) after 5 years [considering Noack's excellent record, evaluations, and recognitions], underline due to bias?" (Appellant's Br., ¶ 118) (bracketed text and emphasis in original).  No evidence found in the record, however, suggests that the female workers in question were similarly situated to him. *See Little v. Republic Ref. Co.*, 924 F.2d 93, 97 (5th Cir. 1991) (noting that disparate treatment must be "under nearly identical circumstances").

On such a thin record, we cannot find that the district court erred in deciding that none of Noack's allegations were sufficient to rise to the level required for a hostile-work-environment claim arising from either sex or race discrimination.  Because Noack has failed to point to any evidence in the record

other than his own unsupported allegations, the district court properly granted summary judgment on these claims.[1]

Noack also appeals the district court's dismissal of his constructive discharge claim. Constructive discharge claims are assessed by the objective standard of whether a "reasonable employee would feel compelled to resign" under the circumstances. *Stover v. Hattiesburg Pub. Sch. Dist.*, 549 F.3d 985, 991 (5th Cir. 2008). The evidence "must demonstrate a greater severity or pervasiveness of harassment than the minimum required to prove a hostile working environment." *Id.* There is no such evidence in the record here. To the contrary, Noack was promoted throughout the period, never had his pay reduced, and never was relegated to menial labor inconsistent with his job responsibilities. *See Aryain v. Wal-Mart Stores Tex. LP*, 534 F.3d 473, 481 (5th Cir. 2008) (setting forth factors to consider in evaluating a constructive discharge claim).

Noack also contends for the first time on appeal that the affidavits the YMCA submitted in support of its motion for summary judgment constituted inadmissible evidence because they had not been notarized. Unnotarized affidavits are admissible when the veracity of the statement is sworn to under penalty of perjury. 28 U.S.C. § 1746(2). Because the affidavits comply with the statutory requirements, the district court's consideration of the affidavits does not constitute plain error. *See  United States v. Duffaut*, 314 F.3d 203, 209 (5th Cir. 2002).

## C.   FLSA Retaliation Claim

Noack also challenges the district court's grant of summary judgment on his FLSA retaliation claim. To establish a *prima facie* FLSA claim, Noack must show, among other things, that he suffered a materially adverse employment

---

[1] To the extent Noack purports to make a retaliation claim under Title VII, that claim is unfounded for the same reasons as Noack's FLSA retaliation claim fails.

action. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67-69 (2006). In order to "screen out trivial conduct[,]" the court applies an objectively reasonable standard in determining whether a materially adverse employment action occurred. *Id.* at 69. In an attempt to satisfy this requirement, Noack claims that he was given a written reprimand for working unauthorized overtime, that he was sent home early one day after having worked his maximum allowed hours, and that his supervisor failed to communicate with him properly. Further allegations include being required to turn in an evaluation form early and an alleged theft of a YMCA form from his office. Noack, however, admitted that he did not suffer any "significant harms": his job was not changed, his pay was not changed, his supervisor was not changed, the staff he supervised was not changed, and he was not removed from the multi-site director position. He only claims that he "sometimes . . . wound up working extra" as a result of Egger's alleged instructions. Because Noack failed to show any evidence that he suffered any materially adverse employment action, we affirm the district court's judgment as to the FLSA retaliation claim.

**D.     Intentional Infliction of Emotional Distress (IIED)**

In Texas, IIED claims are intended as a "gap-filler," an extra tort that is actionable only when a just remedy is precluded due to legal inadequacies in other underlying torts. *Creditwatch, Inc. v. Jackson*, 157 S.W.3d 814, 816 (Tex. 2005). It covers only "extreme and outrageous conduct" on the part of the defendant. *Twyman v. Twyman*, 855 S.W.2d 619, 621-22 (Tex. 1993). Extreme and outrageous conduct is that which is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* at 621. Noack's claims are based at most on minor inconveniences and petty slights. An IIED claim simply requires more than the fact scenario that Noack has alleged. As such, the district court's dismissal of Noack's claim is affirmed.

**E.     Failure to Recuse and Failure to Appoint Counsel**

Noack argues that the magistrate judge erred by not recusing herself *sua sponte*.  Because Noack never moved for recusal below, his attempt to raise the issue on appeal now is untimely.  *United States v. Sanford*, 157 F.3d 987, 988 (5th Cir. 1998) (rejecting a recusal claim as untimely where it was first raised after an adverse decision by the trial judge).  At most, such claims are reviewed for plain error.  *United States v. Gray,* 105 F.3d 956, 968 (5th Cir. 1997) (applying, *arguendo*, plain error review to an untimely recusal claim).  Noack does not point to any facts that suggest the magistrate judge erred by not recusing herself; he only states that her rulings alone were sufficient to show that she was biased against him.  That is not sufficient to raise any questions about the impartiality of the magistrate below, and therefore we would find no error, plain or otherwise, here.  28 U.S.C. § 455.  Noack also asserts that the magistrate judge abused her discretion by failing to appoint counsel.  *See Gonzalez v. Carlin*, 907 F.2d 573, 579 (5th Cir. 1990).    Although Title VII provides for the appointment of counsel, such relief is reserved to "such circumstances as the court may deem just."  42 U.S.C. § 2000e-5(f)(1).  "The decision whether to appoint counsel rests within the sound discretion of the trial court."  *Gonzalez*, 907 F.2d at 579.  We find nothing in the record here to indicate that the Magistrate Judge's careful consideration of Noack's oral request for counsel was improper.

For the foregoing reasons, the judgment of the district court is hereby AFFIRMED.